570 A.2d 134

Betty GEIER, Colitz Coal Company, a/k/a Colitz Mining Company and Frank J. Colitz, Jr., Appellants,

v.

TAX CLAIM BUREAU OF SCHUYLKILL COUNTY, Appellee.

ST. CLAIR AREA SCHOOL BOARD OF EDUCATION, Appellant,

v.

TAX CLAIM BUREAU OF SCHUYLKILL COUNTY, Appellee.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1989.

Decided Feb. 12, 1990.

Petition for Allowance of Appeal Granted July 25, 1990.

322

Ronald R. Pellish, Pottsville, Pellish & Pellish, with him, Lester Krasno, Krasno & Krasno, Pottsville, for appellants, Betty Geier, et al.

Stephen P. Ellwood, Schuykl Haven, for appellant, St. Clair Area School Dist. Bd. of Educ.

Michael J. O'Rourke, Asst. County Sol., for appellee.

Michael A. O'Pake, Mahanoy City, with him, Nicholas A. Quinn, Law Offices of James J. Curran, Pottsville, for intervenor, John P. McCord.

Before CRAIG, BARRY and COLINS, JJ.

## OPINION

BARRY, Judge.

We have before the Court two appeals from an order of the Court of Common Pleas of Schuylkill County denying separate petitions to disapprove an upset sale of property for the nonpayment of taxes and confirm the sale. In 1986 the Colitz Mining Company (Colitz)[1] received a notice from the Tax Claim Bureau of Schuylkill County (Bureau) that

---

1. The Colitz Mining Company is the successor in interest to the Colitz Coal Company. For the purposes of this opinion they will be treated as the same entity.

the Bureau had received an offer of $146,666.88 from John McCord for 74 acres of coal reserves in New Castle Township. The property had been exposed to sale for delinquent taxes in 1953 but no bids were received until McCord began bidding in 1986. The ultimate purchase price is equivalent to the unpaid taxes, interest and penalties as computed by the Bureau. The notice listed Colitz as the former owner of the reserves and contained provisions for petitioning the court of common pleas to disapprove the sale.

The property in question was owned by Colitz and Hilda Geier in 1951, the first year for which taxes were not paid. Hilda Geier had inherited her interest in the property from her brother, Earl Miller, who died in 1946. After her death in 1967, Hilda Geier's interest passed to her daughter, Betty Geier. Colitz and Betty Geier petitioned the court of common pleas to disapprove the sale and the St. Clair Area School District also petitioned for disapproval. McCord filed a petition to intervene which was granted. It was stipulated that Betty Geier owned a one-half interest in the property. After taking testimony and evidence the trial court issued an order confirming the sale. Betty Geier and Colitz Mining Company appealed to this Court. St. Clair School District later appealed to this Court and the appeals were consolidated for argument.

The testimony of Andrew Megna, director of the Bureau, indicated that an entry of the tax claim in a docket possessed by the Bureau showed the property in question was owned by Colitz Coal Company and Earl Miller. (R. 211a.) An entry in the same docket reflecting the upset sale lists the owners as Colitz Coal Company and Hilda Geier. (R. 238a) Mr. Megna's testimony also indicates that the return receipts in the possession of the Bureau show that notice of the claim was addressed to Colitz and Miller and that notice of the sale was addressed only to Colitz. The receipt for the notice of the claim was signed by Francis Colitz and the receipt for the notice of sale was signed by an individual who could not be identified by any of the parties. (R. 239a–242a.)

Colitz and Betty Geier argue that the Bureau did not give adequate notice in 1953 to Colitz and Hilda Geier of the tax claim and the subsequent upset sale. They also argue that the notice given in 1986 did not adequately describe the property; that the purchase price accepted by the Bureau was insufficient; that Colitz and Geier have the right to redeem the property by paying the taxes due; and that McCord should not have been permitted to intervene in the matter. The school district argues that the Bureau did not properly assess the property and that the purchase price is insufficient to cover the taxes due. Because of our disposition of the notice issue, we will not address the other issues.

The statute on which the parties focus their arguments is Section 602 of the Real Estate Tax Sale Law (Law) [2], which in 1953 provided that:

> [N]otice of the sale shall ... be given by the bureau, by United States registered mail, return receipt requested, postage prepaid, to each owner as defined by this act at least ten (10) days before the date of sale, addressed to his last known post office address, or if no post office address is known, or if the notice addressed to the owner is not delivered to the owner by the postal authorities, such notice shall be posted on the property.
>
> 72 P.S. § 5860.602.

The parties have not addressed the question of whether the property was posted, presumably because no one alive today knows whether it was or not. Colitz and Geier argue that the Bureau did not send notice to each owner as required by this section. The Bureau responds by citing the definition of owner in Section 102 of the Law, which in 1953 read, in part:

> "Owner," the person in whose name the property is last registered, if registered according to law, and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property...."

2. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.602.

72 P.S. § 5860.102.

The Bureau argues that Schuylkill County does not have a deed registry system, and that the second part of the above definition therefore applies. Since Betty Geier testified that Colitz mined the property and that Hilda Geier did not actively participate in the operation, the Bureau further argues that only Colitz was entitled to notice as the party in open possession of the property.

 Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision without supporting evidence, or clearly erred as a matter of law. *Chester County Tax Claim Bureau v. Griffith*, 113 Pa.Commonwealth Ct. 105, 536 A.2d 503 (1988). It is the burden of the tax claim bureau to prove compliance with the notice provisions. *Casanta v. Clearfield County Tax Claim Bureau*, 62 Pa.Commonwealth Ct. 216, 435 A.2d 681 (1981).

 The purpose of these provisions is to guard against the deprivation of property without due process of law. With that purpose in mind, both the legislature and the courts over the years have made the notice requirements more stringent. All three types of notice, i.e. publication, certified mail to the owners, and posting of the property are now required for a tax sale to be valid. *Casanta.* The statute now contains a requirement that the Bureau make reasonable efforts to locate a party who does not properly respond to the mailed notice. 72 P.S. § 5860.607a.[3] The definition of owner recited above has also been amended to include the last owner of record in a county without a deed registry system. Prior to this amendment, this Court had followed the principle that a tax claim bureau does not have a duty to search for the record owners of property, *Brown v. Barnes Real Estate Co.*, 44 Pa.Commonwealth Ct. 439, 404 A.2d 437 (1979)[4], although knowledge of the tax collec-

3. Act of July 7, 1947, P.L. 1368, *as amended,* added by the Act of July 3, 1986, P.L. 351.

4. Compare *Borough of Towanda v. Brannaka,* 61 Pa.Commonwealth Ct. 622, 434 A.2d 889 (1981), which was not an upset sale case, but

tor and of the county assessment office was chargeable to the bureau. *Appeal of Marra,* 40 Pa.Commonwealth Ct. 159, 397 A.2d 836 (1979).

The validity of cases such as *Brown* was called into question by the Pennsylvania Supreme Court in *Tracy v. County of Chester,* 507 Pa. 288, 489 A.2d 1334 (1985). In *Tracy* the Court held that where the mailed notice has not been delivered because of an inaccurate address, the Bureau must make a reasonable effort to ascertain the identity and whereabouts of the owners. The Court relied on the United States Supreme Court case of *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), which reversed a tax sale because the mortgagee of the property in question was not sent notice of the sale even though its name and address were reasonably ascertainable, i.e. on file with the county recorder.

■ We are convinced that the Bureau has not met the now heavy burden placed by the statute and the case law and we hold that the Bureau has not shown that the owners of the property were afforded due process. The fact that the notice attempts occurred several decades ago under a less stringent statute does not affect our decision because we are not only addressing compliance with the terms of a statute, but also whether that compliance succeeds in implementing one of our most important constitutional principles. Both the U.S. Supreme Court and the Pennsylvania Supreme Court, as well as our legislature, have expressed the principle that reasonable efforts must be made to determine the correct names and addresses of owners of property if that property is scheduled for an upset sale. If reasonable efforts are not made, then due process has not been afforded. In the context of this case, where the record shows that the Bureau had the names of both owners in its records but sent only one notice, we cannot conclude that proper

which interpreted a similar definition of "owner". In that case we held that where a deed registry is not required by law, the record owners are entitled to notice.

notice had been given. Accordingly, we will reverse the decision of the trial court.

## ORDER

NOW, February 12, 1990, the order of the Court of Common Pleas of Schuylkill County, dated October 18, 1988, at Docket Nos. S–385–1986 and S–360–1986, is reversed.