588 A.2d 480

**Betty GEIER, Colitz Coal Company a/k/a Colitz Mining Company and Frank J. Colitz, Jr., Appellees,**

**v.**

**TAX CLAIM BUREAU OF SCHUYLKILL COUNTY, Appellant,**

**John P. McCord, Intervenor/Appellant.**

**ST. CLAIR AREA SCHOOL BOARD OF EDUCATION, Appellee,**

**v.**

**TAX CLAIM BUREAU OF SCHUYLKILL COUNTY, Appellant,**

**John P. McCord, Intervenor/Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 18, 1991.

Decided March 20, 1991.

Lloyd R. Hampton, Sol. for Schuylkill County Tax Claim Bureau, for appellant.

Michael A. O'Pake, Maria Casey, Pottsville, for intervenor—John P. McCord.

Ronald R. Pellish, Pottsville, for Betty Geier, Colitz Coal Co., a/k/a Colitz Mining Company and Frank J. Colitz, Jr.

Lester Krasno, Andrew Onwudinjo, Pottsville, for Betty Geier, Colitz Coal Co., a/k/a Colitz Mining Co. and Frank J. Colitz, Jr.

Stephen P. Ellwood, Schuylkill Haven, for St. Clair Area School Bd. of Educ.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appellant, the Tax Claim Bureau of Schuylkill County, challenges the order of the Commonwealth Court which set aside the upset tax sale of appellees' real estate due to lack of notice to one of the record owners. 131 Pa.Cmwlth. 321, 570 A.2d 134. The issue is whether the principles enunciat-

ed in *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 489 A.2d 1334 (1985), should be applied to set aside a tax sale in 1953 which, although it was conducted in accordance with the statute then in effect, nevertheless failed to provide notice to all of the record owners of the property. The Commonwealth Court held that the constitutional demand of actual notice, enunciated in *Tracy v. County of Chester,* antedates the announcement of that decision and invalidates the sale at issue in this case.

In 1953, 74 acres of coal reserve in New Castle Township, owned by Hilda Geier and the Colitz Coal Company, were in jeopardy due to delinquency in property tax payments. The Tax Claim Bureau of Schuylkill County ("Bureau") advertised and exposed the property to an upset tax sale on December 14, 1953, pursuant to the Real Estate Tax Sale Law of 1947, 72 P.S. § 5860.101 et seq. The advertisement named the above owners, described the land, and specified the delinquency as being $5,566.44.

No bid in the necessary amount was received, so the property was returned to and held by the Bureau as trustee for the appropriate taxing districts—New Castle Township, Saint Clair Area School District, and Schuylkill County. The 1953 sale was confirmed nisi by the Court of Common Pleas of Schuylkill County on January 6, 1954 and absolutely on March 10, 1954.

By 1986, the total tax delinquency, interest, penalties, and costs on the property had mounted to $146,660.88. Attorney John P. McCord offered the Bureau that sum for the property, and the Bureau notified New Castle Township, the Saint Clair Area School District, the county commissioners of Schuylkill County, Colitz Coal Company, and Betty Geier, the successor in interest to Hilda Geier, of the offer. Betty Geier, Colitz Coal Company, also known as Colitz Mining Company, and Frank J. Colitz, Jr., filed an action in the Court of Common Pleas of Schuylkill County to disapprove the sale, alleging that the 1953 upset tax sale which exposed the property to sale for tax delinquency was invalid due to noncompliance with the notice provisions of the Real

Estate Tax Sale Law, 72 P.S. § 5860.602. The Saint Clair Area School Board of Education also filed an action to bar the sale, alleging that the property had never been properly assessed and that the offered price was less than the proper amount of tax delinquency together with interest, penalties, and costs. The two actions were consolidated for hearing.

Upon consideration of the pleadings and briefs, and after hearing, the trial court ordered that the Bureau sell the property to Mr. McCord for $146,660.88. The court held that the notice provisions of the tax sale law in effect in 1953 were observed and, further, that the price offered by Mr. McCord was sufficient to meet the current delinquency so that the school district could demand no more.

In 1953, the tax sale law required that published notification be given, and that notice be given to each owner, as defined by the act, by registered mail, return receipt requested. It is undisputed that notice of the sale was published and that notice was sent by registered mail to Colitz Coal Company; the dispute is over the statutory requirement that notice by registered mail be sent "to each owner as defined by this act." The act defined owner as follows:

> the person in whose name the property is last registered, if registered according to law, and in all other cases, means any person in open, peaceable, and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property....[1]

Act of 1947, P.L. 1368, 72 P.S. § 5860.102. Schuylkill County is a county in which deed registry laws did not apply so the first clause of the foregoing definition was not applicable. See 21 P.S. § 321, Registration of Deeds in Counties with more than 500,000 Inhabitants. The popula-

1. A 1986 amendment to the Tax Sale Law changed the definition of "owner" to include, in cases such as this where there is no registered owner, "the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording." Act of 1986, July 3, P.L. 351, No. 81, § 1, 72 P.S. § 5860.102.

tion of Schuylkill County in 1950 was less than 500,000. The Pennsylvania Manual, Volume 50, page 997 (1951–52). The "registered" owner is not the same as the "recorded" owner. *In re Return of Sale of Tax Claim Bureau*, 366 Pa. 100, 104, 76 A.2d 749, 752 (1950). The Bureau properly notified Colitz Coal Company by registered mail of the impending tax sale, but did not notify the other owner, Hilda Geier.

Testimony at trial established that Hilda Geier, co-owner of the property in 1953, had a partnership agreement with the mining company which entitled her to royalties. She took no active role in the mining operation and never visited the property; her sole involvement was to keep tonnage reports and royalty records. Royalties were paid by an officer of Colitz Coal Company who visited Mrs. Geier at her home. It was the contractual responsibility of the mining company to pay all property taxes, and Mrs. Geier never received any tax bills and never paid any of the taxes. In 1953 or 1954, Colitz Coal Company ceased operations on the New Castle Township land, abandoning both the property and payment of property taxes, despite its continuing contractual liability for the taxes. The record reflects that Mrs. Geier and her daughter, Betty Geier, never actually received notice of the tax sale and first learned of it when Mr. McCord offered to buy it in 1986.

The trial court held that Geier was not entitled to notice as she was not in visible, apparent possession of the property; notice to the coal company, therefore, was sufficient to satisfy the statutory requirements. The court also held that the offer of Mr. McCord, equal to the tax delinquency, could not be challenged by a taxing authority.

The decision was appealed to the Commonwealth Court, which reversed the judgment of the trial court. Its rationale was that even though the statutory notice requirements were met in conducting the 1953 upset tax sale, the Bureau failed to satisfy the constitutional principles set forth in *Tracy v. County of Chester, supra,* demanding

actual notice to each owner, if reasonably possible, before his land is forfeited by the state. This analysis is correct.

In *Tracy* we held that

where a taxing authority intends to conduct a sale of real property because of nonpayment of taxes, it must notify the *record owner* of property by personal service or certified mail, and where the mailed notice has not been delivered because of an inaccurate address, the authority must make a *reasonable effort* to ascertain *the identity* and whereabouts of the owner(s). In the present case, a reasonable effort would have been to make inquiry of the records maintained by the office of the Secretary of the Commonwealth in Harrisburg to determine the identity and addresses of the partners.

507 Pa. at 296, 489 A.2d at 1338–39 (emphasis added, footnote omitted). We held that due process required as much even though the statute did not require notice to record owners but only to registered owners or open, notorious, apparent owner-occupants, as in this case, so that a taxing authority's strict compliance with the tax sale law does not necessarily satisfy the demands of due process. Our rationale was explained as follows:

Somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and the Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes.... The collection of taxes ... may not be implemented without due process of law that is guaranteed in the Commonwealth and federal constitutions; and this due process, as we have stated here, requires at a minimum than an owner of land be actually notified by government, if reasonably possible, before his land is forfeited by the state.

*Id.*, 507 Pa. at 297, 489 A.2d at 1339.

The principle is that reasonable efforts must be made to determine the correct names and addresses of owners of property which is scheduled for an upset sale. In this case, the record shows that the Bureau had the names of both

owners in its records, but sent only one notice; we conclude that the Bureau did not make a reasonable effort to notify all of the owners. Thus, even though the Bureau technically complied with the notice requirements of the tax sale statute, the Bureau failed to satisfy the demands of due process in conducting the sale.

Accordingly, the judgment of the Commonwealth Court must be affirmed.

Affirmed.