**PARKTON ENTERPRISES, INC.**

**v.**

**David A. KRULAC and Diane E. Krulac, husband and wife, and Cumberland County Tax Claim Bureau.**

**David A. Krulac and Diane E. Krulac, husband and wife**

**v.**

**Parkton Enterprises, Inc.**

**v.**

**Orlando Torres, Jr. and Anailda Malave,**

**Appeal of: Cumberland County Tax Claim Bureau and David A. Krulac and Diane E. Krulac, husband and wife.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2004.

Decided Jan. 4, 2005.

[redacted]

Dale F. Shughart, Jr., Carlisle, for appellants, David and Diane Krulac.

Stephen D. Tiley, Carlisle, for appellant, Cumberland County Tax Claim Bureau.

Scott A. Dietterick, Hershey, for appellee, Parkton Enterprises, Inc.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

David A. Krulac and Diane E. Krulac, husband and wife, (Krulacs) and Cumberland County Tax Claim Bureau (Bureau) appeal from the December 1, 2003, order of the Court of Common Pleas of Cumberland County (trial court) granting the petition of Parkton Enterprises, Inc. (Parkton) to set aside the Tax Upset Sale of property located at 705 Erford Road, East Pennsboro Township, Cumberland County, Pennsylvania (Property) and quieting title in Parkton. We affirm.

The parties stipulated to the following facts. On January 31, 2001, Eastern Savings Bank FSB (Eastern) obtained a default judgment in a mortgage foreclosure action against Orlando Torres, Jr. and Anailda Malave (Torres and Malave), then owners of the Property. In addition to their failure to make mortgage payments, Torres and Malave failed to make payments into escrow for unpaid real estate taxes for the 2000 tax year. Because of insufficient funds in the escrow account, Eastern did not pay the real estate taxes on the Property, and the Bureau acquired a lien against the Property for the unpaid real estate taxes.

Eastern filed an affidavit with the Sheriff pursuant to Pa. R.C.P. No. 3129.1, and a Sheriff's Sale of the Property was scheduled for June 5, 2002. Eastern had knowledge of the Bureau's lien on the Property and served the Bureau with notice of the Sheriff's Sale pursuant to Pa. R.C.P. No. 3129.2.[1] Also, in June 2002, the Bureau

---

1. Pa. R.C.P. No. 3129.1 provides, in relevant part, that no sale of real property shall be held until the plaintiff files an affidavit with the Sheriff setting forth the names and addresses of: (1) the owner or reputed owner of the property and of the defendant in the judgment; (2) every other person who has any record lien on that property; (3) every other person who has any record interest in the property that may be affected by the sale; and (4) every other person with any interest in the property that is not of record but may be affected by the sale and of which the plaintiff has knowledge. Pa. R.C.P. No. 3129.1(a) & (b). Pa R.C.P. No. 3129.2 requires, in relevant part, that all persons named in the affi-

scheduled the Tax Upset Sale for the unpaid real estate taxes for September 26, 2002. All public and personal notices of the Tax Upset Sale were properly advertised and served upon Torres and Malave in accordance with the notice requirements of the Real Estate Tax Sale Law (Law).[2]

The Sheriff's Sale subsequently was rescheduled and held on September 4, 2002, during which Parkton purchased the Property for a bid of one dollar. This was a cost only bid, meaning that Parkton's bid covered only the Sheriff's costs, charges and expenses incident to the execution of the sale. Pa. R.C.P. No. 3138(a). Thus, after the Sheriff's Sale was conducted, the Bureau still retained its lien against the Property. The Sheriff's schedule of distribution listed a priority claim for unpaid taxes for 2000 and 2001 owed to the Bureau in the amount of $2,806.42.

On September 18, 2002, an assignment of mortgage from Eastern to Parkton was recorded in the Cumberland County Miscellaneous Book 690, Page 1425. On September 25, 2002, a Sheriff's deed conveying title of the Property to Parkton was recorded in the Cumberland County deed book.

On September 26, 2002, when the Bureau held its Tax Upset Sale for the unpaid 2000 real estate taxes, Krulacs purchased the Property for a bid of $5,682.20.[3] Neither Eastern nor Parkton was served with prior notice of the Tax Upset Sale. On October 4, 2002, the trial court affirmed the Bureau's petition to confirm the tax sale nisi.

On October 10, 2002, the Bureau attempted to serve post-sale notice by mail upon Parkton pursuant to section 607 of the Law, 72 P.S. § 5860.607. Parkton never received that notice,[4] and, on October 28, 2002, Parkton paid real estate taxes on the Property for the 2002 tax year. Torres and Malave continued in possession of the Property after the September 4, 2002, Sheriff's Sale, and, on November 12, 2002, Parkton filed a Complaint in Ejectment against Torres and Malave.

On December 2, 2002, a deed conveying title to Krulacs was recorded in the Cumberland County deed book. On December 17, 2002, Krulacs filed a Petition to Intervene in the Ejectment Action filed by Parkton against Torres and Malave and, for the first time, advised Parkton of the September 26, 2002, Tax Upset Sale. Krulacs also filed an Action to Quiet Title against Parkton.

After a determination that Torres and Malave had vacated the Property, Krulacs and Parkton assumed joint possession of the Property pending resolution of the quiet title action. On March 12, 2003, Parkton filed a "Petition To [sic] Set Aside the Tax Sale, Nunc Pro Tunc," which was consolidated with Krulacs' quiet title action. Following a hearing on the petitions, the trial court granted Parkton's petition to set aside the Tax Upset Sale

davit be served with written notice of the Sheriff's Sale. Pa. R.C.P. No. 3129.2(c)(1)(i)(B).

2. Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. § 5860.101–5860.803.

3. Krulacs paid the Bureau $7,268.74 to obtain a deed for the Property.

4. The record does not indicate how the Bureau learned that Parkton was the record owner of the Property at the time of sale.

The return receipt card was detached from the envelope and was signed, but the envelope containing the notice was returned to the Bureau. The record does not indicate who signed the return receipt card. We further note, however, that even if Parkton had received the post-sale notice, the Bureau incorrectly stated that the Tax Upset Sale was to occur on October 26, 2002, when, in fact, the sale had been held on September 26, 2002.

and quieted title in Parkton. Relying on *Gladstone v. Federal National Mortgage Association*, 819 A.2d 171 (Pa.Cmwlth.) (holding that a tax claim bureau is required to use common sense business practices in determining those entitled to receive notice of a tax sale), *appeal denied*, 574 Pa. 762, 831 A.2d 601 (2003), the trial court reasoned that, because the Bureau had been served with notice of the September 4, 2002, Sheriff's Sale, the Bureau had a duty to inquire of the Sheriff whether someone had purchased the Property at the Sheriff's Sale. If the Bureau had done so, the Bureau would have learned that Parkton had purchased the Property.

■ Krulacs and the Bureau appealed to this court, which affirmed the trial court's decision based on the Bureau's failure to provide proper post-sale notice to Parkton. Krulacs and the Bureau filed a petition for re-argument, asserting that the improper post-sale notice issue was waived when the trial court allowed Parkton to file a nunc pro tunc petition to set aside the tax sale. After considering the matter, this court granted re-argument.[5]

■ Krulacs and the Bureau argue that the Bureau was not required to provide prior notice of the Tax Upset Sale to Parkton where Parkton obtained record ownership of the Property only one day prior to the tax sale. We disagree.

Section 602 of the Law requires that where property is to be exposed to a Tax Upset Sale, the Bureau must provide three separate methods of notification: (1) publication of the tax sale at least thirty days in advance of the sale; (2) notification of the sale to each owner by certified mail at least thirty days in advance of the sale; and (3) posting of notice of the sale on the property at least ten days prior to the sale. 72 P.S. 5860.602. However, technical compliance with these statutory notice requirements may not, in some circumstances, satisfy the demands of due process. *Geier v. Tax Claim Bureau*, 527 Pa. 41, 588 A.2d 480 (1991).

To meet due process requirements, the taxing authority is required to make a reasonable effort to discover the identity and address of a person whose interests are likely to be affected by the tax sale. *Wells Fargo Bank of Minnesota, NA v. Tax Claim Bureau*, 817 A.2d 1196 (Pa. Cmwlth.2003) (citing *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)). This court, quoting our supreme court, has stated:

> Somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes.... The collection of taxes ... may not be implemented without due process of law that is guaranteed in the Commonwealth and federal constitutions; and this due process ... requires at a minimum that an owner of land be actually notified by government, if reasonably possible, before his land is forfeited by the state.

*Wells Fargo*, 817 A.2d at 1198–99 (quoting *Tracy v. County of Chester Tax Claim Bureau*, 507 Pa. 288, 297, 489 A.2d 1334, 1339 (1985)). Thus, a taxing agency must be cognizant of any unique facts or circumstances that may impact on its attempt to locate the owner of property. *Krawec v.*

---

**5.** Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision unsupported by the evidence. *Michener v. Montgomery County Tax Claim Bureau*, 671 A.2d 285 (Pa. Cmwlth.1996).

*Carbon County Tax Claim Bureau,* 842 A.2d 520 (Pa.Cmwlth.2004).

Here, when the Bureau scheduled the tax sale in June of 2002, the Bureau was cognizant of unique circumstances that could have an impact on the ownership of the Property, i.e., the Sheriff's Sale. Instead of delaying or re-scheduling the tax sale, the Bureau proceeded to give statutory notice of the tax sale with full knowledge that there might be a new owner of the Property as a result of the Sheriff's Sale. Certainly, as the trial court stated, it would have been reasonable for the Bureau to contact the Sheriff prior to the tax sale to determine whether there was a new owner of the Property.[6] Because the Bureau failed to make a reasonable effort to discover the identity of the new owner of the Property, i.e., Parkton, we conclude that the trial court properly set aside the Tax Upset Sale and quieted title in Parkton.[7]

Accordingly, we affirm.[8]

## ORDER

AND NOW, this 4th day of January, 2005, the order of the Court of Common Pleas of Cumberland County, dated December 1, 2003, is hereby affirmed.

6. The Bureau points out that Parkton did not become a record owner of the Property until the day before the tax sale, but the Sheriff's Sale itself was held on September 4, 2002, twenty-two days before the tax sale. The Bureau would not have been surprised by the change in ownership if the Bureau had been in contact with the Sheriff about the Sheriff's Sale.

7. Krulacs and the Bureau also contend that, because Parkton had notice of the tax lien following the September 4, 2002, Sheriff's Sale, Parkton should be deemed to have received implied actual knowledge of the Tax Upset Sale. However, the law does *not* impose a duty on the owner to inquire about pending tax sales upon the purchase of property with a tax lien; rather, the law imposes duties upon the agencies responsible for the tax sales. *See Wells Fargo.* "Thus, any alleged failure on the part of [the owner] is irrelevant in the determination of whether the Bureau complied with its ... obligations." *Wells Fargo,* 817 A.2d at 1200.

8. At oral argument, the Bureau and Krulacs argued that, pursuant to *First Horizon Home Loan Corporation v. Adams County Tax Claim Bureau,* 847 A.2d 774 (Pa.Cmwlth.2004), the Bureau had no statutory duty to continually track changes in title where notice to the owner had been confirmed. However, the issue decided in *First Horizon* was whether a former owner of property sold at a tax sale had standing to challenge the tax sale on behalf of the current owner. Although, in dicta, this court stated that the Bureau has no *statutory* duty to continually track changes in title where notice to the owner has been confirmed, the Bureau nevertheless has a duty to make reasonable efforts to identify owners in order to meet *constitutional* due process requirements.