### Gloria PITTS

v.

### DELAWARE COUNTY TAX CLAIM BUREAU

**Appeal of: Chadd Neumann and Steve Fitzgerald LLP.**

Commonwealth Court of Pennsylvania.

Argued Nov. 12, 2008.

Decided Feb. 27, 2009.

Reargument Denied April 17, 2009.

Michael P. Dignazio, Media, for appellants.

Robert B. George, Media, for appellee, Gloria Pitts.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN [1], Judge, COHN JUBELIRER, Judge, and BUTLER, Judge.

OPINION BY Judge McGINLEY.

Chadd Neumann [2] (Neumann) and Steve Fitzgerald (Fitzgerald), LLP (collectively,

1. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

2. Apparently, the correct spelling of Neumann's name is Chadd Neuman. However, this Court will spell it as it appears in the caption.

Appellants) appeal from the orders of the Court of Common Pleas of Delaware County (**trial court**)[3] that set aside the upset sale at 335 Francis Drive, Haverford, Pa. (Property) and vacated the tax sale deed issued after Appellants' successful bid on the Property.

On March 26, 2007[4], Gloria Pitts (Appellee) filed an emergency petition and alleged:

1. *Petitioner . . . [Appellee] is an adult individual and at all relevant times hereto the record owner/occupant and principal resident of* 335 Francis Lane, Delaware County, Pennsylvania . . . hereinafter the "Property". (emphasis added).

2. Respondent, Delaware County Tax Claim Bureau . . . is charged with . . . collecting upon delinquent taxes from the residents of the County of Delaware, such as your Petitioner [Appellee].

. . . .

4. On September 13, 2006, the Petitioner's [Appellee's] Property was exposed to Upset Price Sale by the Tax Claim Bureau for purposes of collecting upon delinquent 2004 real estate taxes in the purported amount of $2,293.53.

. . . .

6. Your Petitioner [Appellee] . . . only became aware of the said sale for the first time in early October of 2006 upon finding a post-it note upon her door from the purported third party purchaser Chad Neumann, in which he indicated that he had purchased the Property at upset sale. . . .

. . . .

8. Your Petitioner [Appellee] has since determined . . . that notice of the said September 13, 2006 Upset Price Sale is fatally defective in numerous respects, as a result of which she [Appellee] was not properly apprised of these proceedings as required by law and/or this Honorable Court.

. . . .

13. The records of the file in this matter at the Tax Claim Bureau as well as the Office of Judicial Support are completely devoid of any proof of actual notice upon the Petitioner [Appellee] of the September 17, 2006 Upset Tax Sale.

14. In that regard, the Tax Sale Law specifically provides that no owner-occupied property may be sold unless the Tax Claim Bureau has given the owner occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff, or other designated representative.

15. However, while the file does appear to reflect that notice of the sale was purportedly posted upon the Property by the Office of the Sheriff of Delaware County on or about August 6th, 2006, there is absolutely no proof of personal service upon your Petitioner [Appellee], the owner/occupant at all times relevant, as required by the Tax Claim Law.

. . . .

17. Thereafter, by Petition filed . . . on August 28th, the Tax Claim Bureau requested an Order . . . permitting the Tax Claim Bureau to waive the requirement of personal notice regarding the said owner-occupied properties. . . .

. . . .

19. In response to the said Petition, this Honorable Court issued it's [sic] Order . . . in which it listed the said

---

3. For the sake of clarity, this Court shall address the prior judicial determination in this matter as that of the **common pleas court.**

4. On December 15, 2006, Appellee filed her initial emergency petition.

Petition for a Hearing on September 8th, 2006 and further specifically directed the Tax Claim Bureau to serve Respondents [Appellants] with notice of the said Petition and Hearing as required by applicable law.

. . . .

21. Importantly, however, the records of the Tax Claim Bureau as well as the Office of Judicial Support are completely devoid of service/notice of the said Petition and/or the September 8th, 2006 Hearing. . . .

22. Nevertheless, this Honorable Court . . . permitted the sale of Petitioner's [Appellee's] Property without the necessity of personal notice as required by the Tax Sale Law.

23. Assuming for purposes of argument only that waiver of personal service upon an owner/occupant is even legally permissible, which your Petitioner [Appellee] would submit is not, your Petitioner [Appellee] was nevertheless deprived of her due process and substantive rights in that she was never even provided with service/notice of the underlying Petition and/or Hearing thereon as directed by this Honorable Court and did not, therefore, have an opportunity to respond and/or defend.

Emergency Petition Of Gloria Pitts To Add Respondent; Enjoin Added Respondent From Initiating And/Or Prosecuting Action In Ejectment; Stay Distribution Of Proceeds And/Or Delivery Of Deed And Any Other Action In Furtherance Of Purported Upset Sale, And To Open/Set Aside The September 13, 2006 Upset Price Sale Of Real Estate, March 26, 2007, Paragraphs 1–2, 4, 6, 8, 13–15, 17, 19, and 21–22 at 2–5; Reproduced Record (R.R.) at 8a–11a.

Appellants filed an answer and denied Appellee's allegations and asserted that the allegations were conclusions of law.

Answer of Chadd Neumann and Steve Fitzgerald, LLP to Emergency Petition of Gloria Pitts, March 28, 2007, Paragraphs 8–9, 11, 13, 17–18, and 20–23 at 1–3; R.R. at 25a–27a. Appellants further requested the trial court to confirm the sale of Property at 335 Francis Lane, Haverford Township, Delaware County, PA. Answer at 3; R.R. at 27a.

At a hearing, Karen Duffy (Duffy), Upset Price Sale Coordinator, testified for the Tax Claim Bureau. Initially, the Tax Claim Bureau sent a delinquent tax notice by certified mail, return receipt requested to the Property and informed the owner that the 2004 tax year was owed. Hearing Transcript (H.T.), April 30, 2007, at 6; R.R. at 51a. In response, the Tax Claim Bureau received "a signed certified mail the return claim for the 2004 taxes signed for by Melanie Pitts on 4/1/05." H.T. at 6; R.R. at 51a. The Tax Claim Bureau then mailed a notice to the owner of the Property, certified mail, return receipt requested in July of 2006, which informed her that an upset sale was scheduled. The certified mail was returned "unclaimed." H.T. at 6; R.R. at 51a. On August 6, 2006, at approximately 9:30 A.M., Deputy Sheriff Manuel Zaias (Deputy Sheriff Zaias) posted a notice of the pending sale at the Property. H.T. at 7; R.R. at 52a. Deputy Sheriff Zaias also attempted personal service at the Property on August 6 and August 16, 2006. H.T. at 7; R.R. at 52a. Duffy stated that Deputy Sheriff Zaias noted that "August 6 it says N/A and then on August 16 it says second attempt no response 11:30 a.m." H.T. at 7; R.R. at 53a. July 12, 18, and 27, 2006.

Next, the Tax Claim Bureau published a notice of sale of the Property in two newspapers of general circulation. Duffy noted that "[t]his is the advertisement in the News of Delaware County for August 9th [and] [t]his is the Delaware County U.S.

Times, Thursday August 10th." H.T. at 10; R.R. at 55a. Finally, the notice of sale was advertised in the "Delaware County Legal Journal ... on 8/11/06." H.T. at 10; R.R. at 55a. On August 30, 2006, the Tax Claim Bureau sent a ten day notice of the upset sale scheduled for September 13, 2006, to the Property by first class mail. The U.S. Postal Service did not return the mailing. Duffy stated that as a last resort the Tax Claim Bureau referred to "[a] phone sheet, we have a phone number ... [o]ne of the ladies at work wrote down the number that was looked up and they called it and it had been disconnected ... [and that was on] 9/9/06 at 11:10 a.m." H.T. at 8; R.R. at 53a.

On September 1, 2006, the Tax Claim Bureau petitioned the **common pleas court** for confirmation of the sale of the Property. H.T. at 11; R.R. at 56a. The Property was sold to Appellants on September 13, 2006, for the purchase amount of $20,276.00. On October 11, 2006, the Tax Claim Bureau forwarded the sold notice to Appellee at the Property.[5] The **common pleas court** confirmed the sale on November 1, 2006, and the sale became absolute on December 4, 2006. H.T. at 11; R.R. at 56a.

Appellee testified that she resided at the Property for nine years. H.T. at 40; R.R. at 84a. Appellee first became aware of the

sale of the Property on September 28, 2006 "[t]here was a sticky note on my door that just had a name and phone number on it" and "[a]fter that I got a letter."[6] H.T. at 49; R.R. at 93a. Appellee was aware that her property taxes were delinquent and that she "went to Lending Tree ... to refinance for financial reasons." H.T. at 51; R.R. at 95a. Appellee received a loan and "I paid off some debts ... I gave a retainer to my attorney for my pending divorce and I paid the taxes." H.T. at 52; R.R. at 96a. The money for the delinquent taxes was returned "sometime in December when all this started to come to a head and I came down and asked them [why] ... she came back and said we have to give your money back because your house was sold at a tax sale." H.T. at 53; R.R. at 97a. Appellee stated that she never received any notices from the Tax Claim Bureau at the Property and was unaware that the Property was sold on September 13, 2006. H.T. at 55; R.R. at 99a. Finally, Appellee stated that only her name appeared on the deed to the Property.

The **trial court** set aside the upset sale and concluded:

Although Petitioner [Appellee] doe [sic] not plead that the TCB did not make additional reasonable efforts to notify her of the pending upset sale, she does

---

5. On August 29, 2006, the Tax Claim Bureau petitioned the **common pleas court** pursuant to Section 601(3) of the "Real Estate Tax Sale Law" (RETSL), Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.601(3) and sought waiver of personal service by the Sheriff. Section 601(3) of the RETSL provides that "[i]f such personal service cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown." The **common pleas court** granted the petition by order dated September 8, 2006.

6. The letter stated:

Please be advised that 335 Francis Drive was sold at Upset Sale for un-paid real estate taxes. Your real estate taxes have not been paid since 2004. Please call Chadd Neuman at (610) 544–0610. This situation might be able to be worked out if you contact me. If I do not hear from you shortly I will start the eviction process A.S.A.P.

Letter from Chadd Neuman to Gloria Pitts, September 28, [2006], at 1; R.R. at 117a.

present the court with a prima facie case of a violation of her due process rights. In turn, it is within the power of this court to set aside the sale if it is determined, based on the evidence, that the TCB did not make additional, reasonable efforts and/or failed to notate such efforts in the tax file. The clear language of 72 P.S. § 5860.607a sets forth a non-exhaustive list of additional, reasonable efforts the TCB must make if the three standard notification procedures are unavailing. Because there is apparently no evidence that theses efforts were taken (with the exception of Exhibit TCB–5), equitable considerations and due process of law require the tax sale to be set aside.

Order of the **Trial Court**, August 27, 2007, at 6–7.[7]

## I. Whether The Tax Claim Bureau Complied With All Of The Statutory Notice Requirements For A Valid Upset Tax Sale?

■ Initially, Appellants contend[8] that because the Tax Claim Bureau complied with all of the notice requirements of Section 602 of the RETSL, 72 P.S. § 5860.602(a), the **trial court** erred when

7. The **trial court** noted in its December 20, 2007, opinion:

Insomuch as the reasons for this Court's decisions contained in the Orders dated August 27, 2007, are contained within said Orders and as a result of the fact that the issues raised by Appellant on appeal were addressed in said Orders of Court, for purposes of complying with Pa.R.A.P. 1925(a), this Court relies upon and directs the Commonwealth Court's attention to the factual basis and legal analysis contained in said Orders of Court. (footnote omitted).

Opinion of the **Trial Court**, December 20, 2007, at 6.

In the second order dated, August 27, 2007, the **trial court** ordered:

1) the petition is Granted and the upset sale aforesaid is set aside; and

it set aside the upset sale of the Property to Appellants.

Section 602 (**Notice of sale**) of the RETSL, 72 P.S. § 5860.602(a), provides:

(a) *At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal ....*

. . . .

(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

(1) *At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.*

(2) *If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bu-*

2) any tax sale deed issued to the Intervenor [Appellants] as a result of the successful bid on the subject property is to be VACATED and STRICKEN; and

3) all proceeds paid by the intervenor [Appellants] shall be refunded to the intervenor [Appellants] with interest.

Order of the **Trial Court**, August 27, 2007, at 1; R.R. at 30a.

8. This Court's review in tax sale cases is limited to a determination of whether the trial court abused its discretion, erred as a matter of law or rendered a decision with lack of supporting evidence. *Michener v. Montgomery County Tax Claim Bureau*, 671 A.2d 285 (Pa.Cmwlth.1996).

*reau* .... It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

(3) *Each property scheduled for sale shall be posted at least ten (10) days prior to sale.* (emphasis added).

██ *"In a tax sale case, the Bureau has the burden of proving compliance with the statutory provisions of the Law [RETSL]."* (emphasis added). *In re Tax Sale of Real Property Situated in Jefferson Township,* 828 A.2d 475, 479 (Pa. Cmwlth.2003), citing *Geier v. Tax Claim Bureau of Schuylkill County,* 131 Pa. Cmwlth. 321, 570 A.2d 134 (1990), *affirmed* 527 Pa. 41, 588 A.2d 480 (1991). *"It is well settled that the notice provisions of the Law [RETSL] are to be strictly construed and that strict compliance with the notice provisions is essential to prevent the deprivation of property without due process."* (emphasis added). *Jefferson Township,* 828 A.2d at 479, citing (*Murphy v. Monroe County Tax Claim Bureau,* 784 A.2d 878 (Pa.Cmwlth.2001)). "Once the court confirms the sale absolutely, there can be no judicial inquiry in equity or in civil proceedings, except with respect to the giving of notice under the Law [RETSL] and certain other matters." (emphasis added and citations omitted). *Piper v. Tax Claim Bureau of Westmoreland County,* 910 A.2d 162, 164 (Pa.Cmwlth. 2006).

Here, there was sufficient evidence of record and, in fact, two different judges determined that the Tax Claim Bureau complied with the notice requirements of Section 602 of the RETSL, 72 P.S. § 5860.602(a). First, the Tax Claim Bureau notified Appellee by certified mail, return receipt requested, dated April 1, 2004, that her 2004 taxes were delinquent. The delinquent tax notice was mailed to the Property and returned to the Tax

Clam Bureau with the signature of Melanie Pitts. In fact, Appellee acknowledged that she received the delinquent tax notice at the Property. Second, the Tax Claim Bureau sent a notice of an upset sale by certified mail, return receipt request in July of 2006, to the Property where Appellee previously stated that she received the delinquent tax notice. The certified mail was returned "unclaimed." Third, on August 6, 2006, Deputy Sheriff Zaias posted a notice of the pending upset sale scheduled for September 13, 2006, at the Property and then followed up with attempted personal services on August 6 and August 16, 2006. Fourth, on August 30, 2006, the Tax Claim Bureau sent a ten-day notice of sale of the Property by first class mail to the Property. The U.S. Postal Service did not return the mailing. Fifth, the Tax Claim Bureau published notice of the pending sale of the Property in two papers of general circulation, "News of Delaware County" and the "Delaware County U.S. Times" on August 9th and August 10th of 2006. Sixth, the Tax Claim Bureau published notice of the pending sale of the Property in the "Delaware County Legal Journal" on August 11, 2006. Seventh, Appellee never argued that the Property was not listed under the correct address or that she ceased to reside at the Property or that the notices should have been mailed to another address.

The Tax Claim Bureau's compliance with the notice requirements of Section 602(a) of the RETSL indicated that the Property address was correct and that Appellee had notice of the pending upset tax sale. Therefore, *"[n]o sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section."* Section

602(h) of the RETSL, 72 P.S. § 5860.602(h). (emphasis added).

## II. Whether It Was Mandatory That The Tax Claim Bureau Comply With All Additional Notification Efforts Under Section 607.1 Of The RETSL?

■ Assuming *arguendo,* Appellants contend that the Tax Claim Bureau was not required to go beyond a search of a current telephone directory because any further effort under Section 607.1 of the RETSL, 72 P.S. § 5860.607a, would not have disclosed a different mailing address.

Section 607.1[9] **(Additional notification efforts)** of the RETSL, 72 P.S. § 5860.607a, provides:

> When any notification of a pending tax sale . . . is required to be mailed to any owner . . . *and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts* to discover the whereabouts of such person or entity and notify him. *The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property* . . . . (emphasis added).

In *Jefferson Township,* this Court addressed whether the Somerset County Tax Claim Bureau was required to exhaust *all* "efforts" listed in Section 607.1 of the RETSL, 72 P.S. § 5860.607a, in addition to the mailing, posting, and publication notices under Section 602 of the RETSL, 72 P.S. § 5860.602(a):

> The trial court rejected [M. Susan] Ruffner's contentions that the Bureau failed to take additional reasonable efforts as required by Section 607.1 of Law [RETSL] to locate her whereabouts upon not receiving any signed receipt confirming the delivery of the notices sent to her by the Bureau. . . .
>
> . . . .
>
> The requirement of due process was explained by this Court in *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137, 1142 (Pa.Cmwlth.1997), petition for allowance of appeal denied, 555 Pa. 722, 724 A.2d 936 [(]1998[)], as requiring the taxing bureau to conduct a reasonable investigation to ascertain the identity and whereabouts of the latest owners of record of property subject to an upset sale for the purposes of providing notice to that party. A taxing bureau's duty to investigate such matters is confined to determining the owners of record and then to use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale maybe given. . . . *Where notice is obviously not effectively reaching the owners of record, the taxing bureau must go beyond the mere ceremonial act of notice by certified mail.* . . . *However-er, due process does not require the taxing bureau to perform the equivalent of a title search or to make decisions to quiet title.* . . .
>
> Our review of the record in this case reveals that the trial court did not err in

9. Section 607.1 was added by the Act of July 3, 1986, P.L. 35.

dismissing Ruffner's exceptions to the sale of her property. As found by the trial court, *proper notice was sent to Ruffner by the Bureau by certified mail, return receipt requested but Ruffner chose not to claim the mail from the postal authorities. In addition, proper first class mail notice was forwarded to Ruffner at her proper mailing address and was not returned to the Bureau. Finally, reasonable efforts were made by the Bureau to determine whether there was any other address at which Ruffner could have been served.*

*As correctly stated by the trial court, Section 607.1 only requires the Bureau to check the telephone directories in the county where the property is located.* Moreover, even though the address on file with the Bureau for Ruffner was outside Somerset County, Section 607.1 does not impose an obligation on the Bureau to check directories outside the county particularly where the Bureau checked the assessment records and determined that Ruffner's correct address in Allegheny County was already on file.... *In addition, there is nothing in the record to indicate that there was an alternate address or phone number in the Bureau's files at which the Bureau had made contact with Ruffner.* We also agree with the trial court that the Bureau was not required to conduct an internet search for Ruffner's office address and phone number. Section 607.1 of the Law [RETSL] does not require the Bureau to surf the web for an owner's alternative address or phone number, particularly where the Bureau is satisfied through other efforts that it has the owner's correct address on file.... As stated by the trial court,

*while the Bureau did not check the county's recorder of deeds and prothonotary offices, nothing in the record suggests that such a search would have revealed anything other than the address to which the notices were mailed.*

... As found by the trial court, *Ruffner simply chose not to go to the post office to retrieve her certified mail and the subsequent notice sent to Ruffner at her correct address by first class mail was not returned.* (emphasis added and citations and footnote omitted).

*Id.* at 477–80.

In *Jefferson Township*, the Somerset County Tax Claim Bureau only checked the county assessment records listed in Section 607.1 of the RETSL to determine whether Ruffner's address was correct. This Court determined that this additional notification effort was sufficient and no further "efforts", i.e. a search of current telephone directories, dockets and indices of the recorder of deeds and prothonotary offices, and previous contacts made to a different address or telephone number contained in the property file, under Section 607.1 of the RETSL were necessary.

Here, the Tax Claim Bureau searched the local phone directory as one of the "reasonable efforts" listed in Section 607.1 of the RETSL and found a telephone number that corresponded with the Property mailing address where the notices were sent. Although the telephone number was disconnected, the Tax Claim Bureau determined that the Property mailing address was correct. Like in Jefferson Township, the Tax Claim Bureau was not required to undertake any additional notification efforts.

Accordingly, this Court must reverse.[10]

10. Because the upset sale was valid, this Court need not address Appellants argument that the **trial court's** decision to set aside the upset sale initially confirmed by the **common pleas court** was a departure from the rule that "judges of coordinate jurisdiction sitting in

Judge SMITH–RIBNER concurs in the result only.

Judge FRIEDMAN dissents.

## ORDER

AND NOW, this 27th day of February, 2009, the orders of the Court of Common Pleas of Delaware County in the above-captioned matter is reversed.

## DISSENTING OPINION BY Judge COHN JUBELIRER.

I must respectfully dissent. The Delaware County Tax Claim Bureau (Bureau) was required to abide by the requirements of Section 607.1 of the Real Estate Tax Sale Law (RETSL),[1] the statutory section that deals with additional notification efforts. It did not do so. Accordingly, I would affirm the order of the Court of Common Pleas of Delaware County (trial court).

The property at issue was occupied by its owner, Gloria Pitts (Owner). The Bureau sent notice of the sale via certified mail to Owner in July 2006. This notice was returned to the Bureau as unclaimed. In August 2006, the Bureau sought waiver of personal service upon Owner, which the trial court granted. The Bureau did not make any further efforts to personally serve Owner prior to or subsequent to the sale of the property. Accordingly, Owner was not personally served notice of the tax sale. Owner only learned of the sale after finding a post-it note on her door that had been left by the purchaser of the property. Owner challenged the sale before the trial court. The trial court reviewed the record, made necessary findings, and deter-

the same case should not overrule each other's decision on the same issue." *In re De Facto Condemnation and Taking of Lands of WBF Associates, L.P. By Lehigh–Northampton Airport Authority*, 588 Pa. 242, 903 A.2d 1192, 1207 (2006).

mined that no reasonable efforts were made to notify Owner of the tax sale. I agree with the trial court's findings and conclusion.

At issue here is Section 607.1(a) of the RETSL. There are two parts to this Section. The first part identifies when the section applies:

[w]hen any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner … and such mailed notification is … returned without the required receipted personal signature of the addressee … the bureau must exercise *reasonable efforts* to discover the whereabouts of such person or entity and notify him.

72 P.S. § 5860.607a(a) (emphasis added). The present case falls within this language because, as noted, the notice was returned without the required signature of the addressee. The effect of this first portion of the statutory section is to require "reasonable efforts" by the Bureau to discover the location of a property owner when the Bureau has not received a signed acknowledgement of the receipt of notice.

The term "reasonable efforts," as used in the first part of Section 607.1, is defined in the second part of that statutory section. The definition of "reasonable efforts" has two components: (1) mandatory search requirements; and (2) discretionary search requirements.

As suggested by the name, the mandatory nature of these requirements is identified by the word "shall", clearly indicating that these searches are to be performed *in*

1. Act of July 7, 1947, P.L. 1368, added by the Act of July 3, 1986, P.L. 351, *as amended*, 72 P.S. § 5860.607a.

*all cases.* 72 P.S. § 5860.607a(a). The mandatory requirements are as follows:

> [T]he bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts **shall include,** but not necessarily be restricted to a search of[: (1)] current telephone directories for the county[; (2)] the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office[; and (3) ] contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.

72 P.S. § 5860.607a(a) (emphasis added). Completion of one of these requirements does not eliminate the necessity to satisfy the remaining two requirements. Failure by the Bureau to conduct all three searches, at a minimum, is a fatal defect. *Fernandez v. Tax Claim Bureau of Northampton County,* 925 A.2d 207, 214 (Pa. Cmwlth.2007) (setting aside a judicial sale, noting that the tax claim bureau's "failure to consult with these tax assessment offices provides sufficient basis on its own to require the judicial sale to be set aside.").

The second component, the discretionary search requirements, are more broadly defined and what constitutes an appropriate discretionary search is determined on a case by case basis: "[T]he bureau's efforts shall include, *but not necessarily be restricted to* [the mandatory searches]." 72 P.S. § 5860.607a(a) (emphasis added). In determining what are appropriate additional discretionary efforts, the Bureau is required to "use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given." *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137, 1142 (Pa. Cmwlth.1997).

In this case, the Bureau focused on the fact that the telephone directory requirement had been satisfied, but there is no indication in the original record or briefs that the second requirement, the "search ... of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office" was completed. 72 P.S. § 5860.607a(a). The majority treats the mandatory searches as being merely discretionary. The statutory language and this Court's precedent establish that "reasonable efforts" consist of the three mandatory searches and, given the facts, whatever additional searches are appropriate. Before we get to a discussion of what discretionary efforts, if any, are required, the mandatory search requirements must clearly have been met. Our precedent is clear that the mandatory search requirements will be strictly enforced, *see, e.g., Fernandez,* even if following the steps might not have led to a different result.[2] I believe the majority errs by focusing on the discretionary efforts that the Bureau made, without first addressing the separate issue of whether

---

**2.** The majority relies on *In re Tax Sale of Real Property Situated in Jefferson Township,* 828 A.2d 475, 480 (Pa.Cmwlth.2003), to support the conclusion that a review of county records, such as the recorder of deeds, was not necessary because "nothing in the record suggests that such a search would have revealed anything other than the address to which the notices were mailed." However, that case did not involve owner-occupied property. In that case, the owner was arguing that the Bureau needed to search the recorder of deeds records of a county outside of the county where the property was located. In contrast, the statute only *requires* a search of the recorder of *deeds for the county where the property is located.* Nothing in that case can be read to allow a tax claim bureau to forgo conducting the statutorily mandated search of the office of the recorder of deeds for the county where the property is located.

the Bureau complied with mandatory search requirements.

The majority's opinion effectively puts the cart before the horse, absolving the Bureau of the mandatory "additional notification efforts" of Section 607.1 it must conduct, *prior to the sale,* because evidence produced *after* the sale indicated that the address the notice was sent to was indeed where Owner resided. The majority references Section 602(h) of the RETSL and its language that "[n]o sale shall be defeated ... because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section." Section 602(h) of the RETSL, 72 P.S. § 5860.602(h). The majority reads this language as precluding any subsequent review of the notification efforts because the Bureau complied with the requirements of Section 602 of the RETSL. The majority's interpretation reads out of RETSL the additional, prescribed notification efforts of Section 607.1. I respectfully disagree, and note that Section 602(h) is premised on the assumption that "notice was given as prescribed." I would read Section 602 *in pari materia* with Section 607.1. The protection of Section 602(h) only applies if the Bureau has fully complied with the notice requirements of the RETSL, which include the mandatory efforts of Section 607.1. Admittedly, "[o]nce the court confirms [a] sale absolutely, there can be no judicial

inquiry in equity or in civil proceedings *except* with respect to the giving of notice under [the RETSL] and certain other matters." *Piper v. Tax Claim Bureau of Westmoreland County,* 910 A.2d 162, 164 (Pa.Cmwlth.2006) (emphasis added). The mandatory search provisions of Section 607.1 fall within this exception.

Additionally, there is an undercurrent in the majority's arguments that intimates that the Owner did not receive notice due to some fault of her own. In particular, the majority lists seven points that it finds to be important in concluding that sufficient notice was provided. The majority notes that Owner acknowledged receiving the tax delinquency notice. Additionally the majority notes that the judicial sale notices were returned as "unclaimed," implying that Owner purposefully avoided receiving these documents. The majority also notes that there were efforts at personal service, and that the sale was advertised in local newspapers.

To the extent the majority suggests that Owner was at fault in not claiming the notice sent to her by the Bureau, our case law is clear that "[T]he focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the statute." *Smith v. Tax Claim Bureau of Pike County,* 834 A.2d 1247, 1251 (Pa.Cmwlth.2003).[3] The

---

**3.** Whether the statutory task is pointless, or whether the property owner is herself negligent, does not excuse the Bureau from conducting these statutorily required searches:

> The [RETSL], however, imposes duties not upon owners but upon the agencies responsible for real estate tax sales. Notice to owners of an impending sale of their properties is a duty requiring strict compliance in order to guard against the deprivation of property without due process. Thus, the focus is not on the alleged neglect of the owner, which is often present in

some degree, but on whether the activities of the Bureau comply with the requirements of the statute. [The property owner] did not have a duty to give the Bureau notice of her address change.

> Finally, the Bureau argues that because Mrs. Smith never lived in Pike County, the "Trial Court's insistence on strict construction of Section [607.1] is abuse of discretion." The mandate to "search phone directories, records and indices, would be a futile act which would accomplish no further protection for the property owner and

statutory requirements are imposed "upon the agencies responsible for real estate tax sales" and require those agencies to strictly comply with the notice requirements "in order to guard against the deprivation of property without due process." *Smith*, 834 A.2d at 1251 (citing *McElvenny v. Bucks County Tax Claim Bureau*, 804 A.2d 719 (Pa.Cmwlth.2002)).

I disagree with the majority's finding that the notice requirements were met *as to the tax sale* because Owner acknowledges having received notice of tax delinquency. The law is clear that receipt of notice of tax delinquency is not relevant for purposes of the tax sale. Our United States Supreme Court, in addressing the Constitutional dimension of due process and notice, has recently and clearly held that "[a]n interested party's 'knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.'" *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 1717, 164 L.Ed.2d 415 (2006) (quoting *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983)). I respectfully suggest that, per *Jones*, we cannot equate knowledge of a tax delinquency with knowledge of a tax sale. In this case, regardless of what notice Owner received as to the delinquency, the Bureau was required to ensure that all statutorily prescribed procedures were met.

Additionally, in considering these seven points relied upon by the majority, it must first be mentioned that none of these seven points, either individually or collectively, made it unnecessary for the Bureau to comply with the requirements of Section 607.1. The language in Section 607.1 makes clear that its provisions apply whenever a notice is returned to the Bureau, regardless of the reasons why the notice was not received:

> When any notification of a pending tax sale ... is required to be mailed to any owner ... and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee *or is not returned or acknowledged at all*, then, before the tax sale can be conducted or confirmed, the bureau must [utilize the notification efforts of Section 607.1].

72 P.S. § 5860.607a(a) (emphasis added).

I agree with the Owner that the record itself lacks documentary evidence that substantiates that all of the various means of notice referenced in these seven points were, in fact, used. At best, factual issues exist as to whether these various efforts were conducted. Notably, Owner's testimony indicates that she did not receive any documentation indicating that there was certified mail waiting for her at the post office. (Trial Ct. Hr'g Tr. at 58.[4])

---

could at the same time require a pointless task."

Whether the statutory task is pointless does not excuse its attempted performance. The Bureau['']s argument that pursuing the statutory requirements for additional notice of a tax sale would not have made a difference is mere speculation.
*Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251–52 (Pa.Cmwlth.2003) (citations omitted). I would also note that there was testimony that Owner's estranged

husband had access to her mail and occasionally took her mail during July and August of 2006. (Trial Ct. Hr'g Tr. at 69–70.) Owner also testified that her estranged husband had previously been responsible for the payment of the taxes. (Trial Ct. Hr'g Tr. at 57.)

4. I note that the record contains two distinct transcriptions of the April 30, 2007 hearing that took place before the trial court. There are some scrivener's differences between the two transcriptions, resulting in differences in the pagination between the two transcrip-

At argument before the En Banc Court, counsel for the purchasers summed up his client's position and, as it is, the majority's analysis, by stating the legal maxim that equity does not require an act that is fruitless. With this maxim, counsel and the majority nullify the mandatory statutory language based on the *ex post facto* conclusion that these mandatory searches would have been pointless. I note that these notice requirements are not creatures of precedent, arising in equity, but are legislatively prescribed in statute. In strictly interpreting these provisions, I do not see this Court as requiring "fruitless" endeavors but, rather, I see this Court fulfilling its function of upholding and applying the due process concerns founded in the United States and Pennsylvania Constitutions, which informed the General Assembly in its enactment of the RETSL. As discussed earlier, we are required to strictly construe and apply these notice requirements. In this case, the trial court, in response to Owner's petition, did just that.

As I would affirm the trial court's order, I must respectfully dissent from the majority.

tions. However, for purposes of the issues before this Court in this appeal, the transcriptions are substantively the same. For clarity's sake, I note that both the majority opinion and my dissent cite to the transcription in the record that was also included in the reproduced record before this Court, and that had been attached as Exhibit A to the memorandum of Owner in support of her petition to set aside the sale that she had filed in the trial court.