Charles **FERNANDEZ,** Appellant

v.

**TAX CLAIM BUREAU OF NORTHAMPTON COUNTY.**

v.

**John Heilman and Mary Ann Heilman a/k/a Mary Heilman.**

Commonwealth Court of Pennsylvania.

Argued April 10, 2007.

Decided May 31, 2007.

William P. Coffin, Easton, for appellant.

Christopher T. Spadoni, Bethlehem, for appellee, Tax Claim Bureau of Northampton County.

Bruce A. Thomas, Easton, for appellees, John and Mary Heilman.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

This case is an appeal from an Order and Adjudication of the Northampton County Court of Common Pleas (trial court) denying a petition to set aside a judicial sale. The case involves the notice provisions of the Real Estate Tax Sale Law (Law).[1] Prior to the tax sale, Charles Fernandez (Owner) owned the property in question, a vacant lot in Easton, Northampton County (Subject Property). After Owner became delinquent by not paying taxes on the Subject Property, the Northampton County Tax Claim Bureau (Bureau) provided various forms of notice and then sold the Subject Property at judicial sale to John and Mary Ann Heilman (Purchasers). Owner avers that the Bureau did not take sufficient steps to discover his current address, resulting in his not receiving notice of the sale and, so, accordingly, the sale should be set aside. Before the Court are two primary issues: (1) whether the Bureau was required, under the plain language of the Law and in em-

1. Section 607.1 of the Act of July 7, 1947, P.L. 1368, added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a. This case involves interpretation and application of Section 607.1 of the Law, which provides:

When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, *the bureau must exercise reasonable efforts to discover*

*the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.* When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. § 5860.607a(a) (emphasis added).

ploying reasonable efforts to ascertain the Owner's address, to consult with local, municipal and school tax bureaus;[2] and (2) whether the posting of the Subject Property constitutes actual and sufficient notice to the Owner of the pending sale.

Owner owned both the Subject Property, which is a vacant lot at 204 West St. Joseph Street, Easton, and the single family house immediately adjacent to it at 210 West St. Joseph Street (210 Property). The Subject Property is on the corner of West St. Joseph Street, where it intersects with West St. John Street.[3] Owner used the Subject Property as a yard for the 210 Property. (Trial Ct. Tr. at 26, May 17, 2006.) The deeds to both properties contain a certification by Owner "that the precise residence of the within grantee, [Owner] is: 50 Kiernan Avenue, Hellertown, PA" (Hellertown Property). (Deed for Subject Property at 3, November 27, 2001; Deed for 210 Property at 3, November 27, 2001.) Owner did not own the Hellertown Property, but rented it from another person.

In May 2003, the Bureau sent notice by certified mail to the Hellertown Property that Owner had unpaid 2002 school real estate taxes on the Subject Property in the amount of $395.36.[4] Owner acknowledged his receipt of the notice by signing for it. The notice indicated that if he failed to pay the taxes the Subject Property could be sold to satisfy the outstanding taxes.

It is not clear exactly when, but at some point subsequent to the recording of these deeds, Owner switched his residence from the Hellertown Property to the 210 Property.[5]

In July 2004, the Northampton County Sheriff's Office (Sheriff) posted the Subject Property to put Owner on notice of the 2002 delinquent taxes. The Sheriff also posted the Subject Property in August 2004 with notice of the tax upset sale.

On August 2, 2004, the Bureau mailed notice of the tax upset sale to the Heller-

2. Owner frames this as two issues: (1) Did the trial court properly determine that the Bureau in this case made reasonable efforts to learn the correct address of Taxpayer; and (2) Do the reasonable efforts a tax claim bureau must engage in to find an owner's address include contacting local, municipal and school tax bureaus to learn where each mails its tax bill for the property subject to the sale?

3. There is some discrepancy from Owner as to whether the Subject Property or 210 Property is on the corner. At the hearing, Owner's Counsel stated that "[Owner] lives at Saint Joseph, Your Honor. But it's on the corner of Saint Joseph and Saint John." (Trial Ct. Tr. at 13, May 17, 2006.) In Owner's Statement of Facts and Conclusions of Law filed with the trial court on May 25, 2006, Owner indicates that: "4. The premises of 204 W. St. Joseph Street, City of Easton, Northampton County, Pennsylvania, is on the corner of W. St. Joseph Street and St. John Street." ([Owner's] Statement of Facts and Conclusions of Law, Facts ¶ 4, May 25, 2006.)

4. The amount of the initial bill was $370.36. (See Trial Ct. Tr. at 34, May 17, 2006.) The amount in the certified notice seems to include an additional amount for fees and interest, bringing the total at the time of the notice to $395.36. With additional interest and fees that accrued during the time leading up to the sale, the amount the Bureau ended up paying to the District from the judicial sale was $425.56. (See Trial Ct. Tr. at 33, May 17, 2006.)

5. Owner testified that he left the Hellertown Residence in 2001; however, assuming that to be the case, it is not clear why he was there to sign for the notice that was sent to the Hellertown Property in May 2003. It is unclear if he made the county aware of this change, although in 2004 and 2005, the City of Easton's 2004 and 2005 real estate tax bill and the Easton Area School District's real estate school tax bill for 2004/2005 for the Subject Property were sent to the 210 Property.

town Property. The Postal Service returned the notification to the Bureau with a notation that it could not be forwarded.

On September 13, 2004, the Bureau exposed the Subject Property to a tax upset sale as a result of the 2002 delinquent taxes. At the tax upset sale, no one bid on the Subject Property. On November 22, 2004, the Northampton County Court of Common Pleas (trial court) issued a Rule to Show Cause as to why the Subject Property should not be sold at a judicial sale. The Sheriff posted the Subject Property in December 2004, with notice of the upcoming judicial sale.

The judicial sale was held on January 10, 2005, and Purchasers successfully bid on, and were sold, the Subject Property. Purchasers received title to the Subject Property by deed dated February 22, 2005.

In March 2005, Owner contacted the tax department about his 2004 taxes, at which time he learned of the judicial sale of the Subject Property for the 2002 taxes. On May 13, 2005, Owner filed a Petition to Set Aside Judicial Sale Nunc Pro Tunc (Petition).[6]

The trial court conducted a hearing on Owner's Petition and heard the testimony of four witnesses: (1) Owner; (2) two representatives from different local taxing authorities; and (3) the Tax Claim Supervisor for Northampton County (Tax Claim Supervisor).

At the hearing, Owner testified that he did not receive notice of the tax upset sale or the judicial sale. He testified that he essentially used the Subject Property as a yard for his house, and that he regularly cut the Subject Property's grass. He also testified that he did not see any signs posted on the Subject Property prior to the judicial sale.

Representatives from two local taxing authorities, the City of Easton (City) and the Easton Area School District (District) testified that their respective tax bills for the Subject Property for the years 2004 and 2005 were sent to the 210 Property.[7]

In contrast, the Tax Claim Supervisor testified that the Bureau's records for the Subject Property *did not* indicate that mail for the Subject Property should be sent to the 210 Property. She indicated that the only information regarding his address was that Owner resided at the Hellertown Property. She testified in detail as to her ultimately unsuccessful efforts to try to obtain Owner's address, but also acknowledged that she did not contact either the City or the District to see what contact or forwarding information either might have had.

The Tax Claim Supervisor testified that she did not check the telephone book and that she was not sure if anyone else in her office checked the telephone book, but that

**6.** The parties engaged in settlement discussions and reached a settlement agreement that was approved by the trial court. (*See* Trial Ct. Tr. at 2–5, Aug. 30, 2005.) Under the terms, Owner agreed to compensate Purchasers approximately $2000.00 in exchange for the Subject Property. Owner was also to pay Northampton County $2000.00, and Northampton County was to return to Purchasers the excess money they paid at the sale, totaling approximately $1000.00. Owner failed to make the payments set forth in the agreement, and the trial court held him in contempt, fining him $500.00. The trial

court also scheduled the case for a hearing on the merits of Owner's Petition.

**7.** The first representative was from the Treasurer's Department for the City of Easton. He testified that the 2004 and 2005 tax bills were sent to the 210 Property. The second representative was from the collection agency used by the Easton Area School District (District). She testified that the tax bills for the Subject Property for the 2004/2005 school year were sent to the 210 Property.

it was standard practice within her office to check the telephone book.[8] She also testified that she conducted a "Google" computer-based search for Owner's whereabouts, which produced a "Chuck Fernandez" living at the Hellertown Property. She dialed the telephone number the Google search provided, and found that the telephone had been disconnected.

The Tax Claim Supervisor checked the recorder of deeds office, which showed that Owner resided at the Hellertown Property. The Tax Claim Supervisor also testified that the Bureau does not change its records without notice from either the tax collector's office or from the owner and that, in this case, it had received no such notice from either that there was a change of address.

The Tax Claim Supervisor also testified that the Subject Property was posted on three occasions. She acknowledged, though, that she had no direct knowledge of the posting, and that "I cannot swear to a posting, no, sir, I cannot swear to that at all." (Trial Ct. Tr. at 36, May 17, 2006.)[9]

At the hearing, during Bureau's questioning of the Tax Claim Supervisor, the trial court asked if Owner's Counsel was going to require that the individuals who posted the Subject Property appear to testify; Owner's Counsel stipulated that the Subject Property was posted, but did not stipulate to the manner in which it was posted.[10]

---

8. Two telephone books (both from calendar year 2004, but in different fiscal years) were introduced into evidence. The telephone books did not identify a Charles Fernandez, and did not list the 210 West St. *Joseph* Street address, but both telephone books did have a "Chuck Fernandez" at 210 West St. *John* Street.

9. This testimony, placed in context, follows:
A: ... His property was posted after [the notice of the judicial sale was returned] because he did not sign for his notice.
Q: I'm sorry?
A: His property was posted by a sheriff.
Q: But you didn't see the sheriff post it, did you?
A: No, sir. We never see any of the postings personally. He was also posted for the upset sale.
Q: Again, you did not see whether anyone posted that property for an upset sale?
A: I cannot. I cannot say that I saw it no. But it is—he would have been posted three times in the year; once for the notice that was not signed for the 2003[sic] taxes, that would have been in—most likely in July, then he was posted for the upset sale also in July, and then he would have been posted for the judicial sale in January.
Q: But you didn't see any posting, you didn't drive by the property and see the posting?
A: I cannot swear to a posting, no, sir, I cannot swear to that at all.
(Trial Ct. Tr. at 35–36, May 17, 2006.)

10. The discussion surrounding this stipulation follows:

Q: Okay. Then you've testified very briefly in reference to the property being posted, and that was posted on a number of occasions to your knowledge?
A: Yes. It was posted on August 12th of 2004 for the upset sale. And that was bought by one gentleman, one person that we the county hires for—
[Owner's Counsel]: Your Honor, I'm going to object to this, because she can't testify to any type of posting in that on direct examination. They already said she didn't see it. The only way you can have the evidence.
[The Court]: Do you really want the sheriffs or whoever it is to come in here and say that they actually posted it?
[Bureau Counsel]: Judge, I was hoping that the Court would take this as a business record exception. We have given Mr. Coffin[, Owner's Counsel,] great leeway with [the Tax Claim Supervisor's] records. What I'm suggesting is that Mr. Coffin is correct, she did not see the posting, but her records would indicate when the posting was done. And I think the Court did rely upon—
[Owner's Counsel]: I would stipulate to it within the records.
[The Court]: Then a business record, very well. So it was posted 8/12 for the upset sale—for the upset sale, and it was posted on December 13th, '04 for the judicial sale.

■ The trial court denied the Petition, finding that the Bureau had engaged in reasonable efforts to contact Owner.[11] Additionally, the trial court found the evidence credible that the Subject Property was posted, but found the Owner "incredible" that he did not see the notices, particularly because he maintained the Subject Property and lived next to it. Relying on *In the Matter of Tax Sale of 2003 Upset,* 860 A.2d 1184, 1185 (Pa.Cmwlth.2004), and based on its credibility determinations, the trial court concluded that Owner received actual notice of the sale. The trial court, alternatively, concluded that Owner received actual notice in May 2003 when he signed and received the certified mail notice indicating that he had delinquent school real estates taxes for 2002. The trial court concluded that since actual notice can cure defects in statutory notice requirements, the sale was not void.[12] Accordingly, the trial court set aside the Petition and Owner appeals that decision.

We first address whether the trial court properly determined that the Bureau made reasonable efforts to learn the correct address of Owner.

■ The law is well settled in Pennsylvania that a valid tax sale requires strict compliance with all three of the notice provisions of Section 602 of the Law, 72 P.S. § 5860.602: publication, certified mail, and posting. *In re Upset Price Tax Sale of September 25, 1989,* 150 Pa.Cmwlth. 191, 615 A.2d 870, 872 (1992). If any of the notices are defective, the sale is void. *Id.* Owner's first argument addresses the certified mail notice requirement.[13]

Owner argues that the sale is null and void because Owner never received actual notice of either the upset or judicial sale. Owner argues that, if the Bureau's certified mailed notice is returned to the Bureau, the Bureau is required by statute to contact local tax collectors for contact information for the owner. Section 607.1(a) of the Law, 72 P.S. § 5860.607a(a). Owner argues the Bureau failed to abide by this requirement. Additionally, Owner argues that the due process clause of the 14th Amendment of the United States Constitution requires additional steps to find a property owner when notice is returned that was sent to the owner to apprise him of an upcoming sale of his property. *Jones v. Flowers,* 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

In response, the Bureau argues that its efforts, most notably the computer "Google" search and the telephoning of the telephone number the search obtained,

**[Tax Claim Supervisor]:** They are by two different people.
(Trial Ct. Tr. at 54–55, May 17, 2006.) We note that the original record does not contain the records of posting to which the trial judge and counsel referred during the hearing.

11. In doing so, the trial court first found that the Petition was timely because it was brought within the six month statute of limitations under Section 5522(b)(5) of the Judicial Code, 42 Pa.C.S. § 5522(b)(5). This finding is not challenged on appeal.

12. In tax sales cases, this Court's review is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision with a lack of supporting evidence. *Rice v. Compro Distributing, Inc.,* 901 A.2d 570, 574 (Pa.Cmwlth. 2006). The trial court is the finder of fact and has exclusive authority to weigh the evidence, make credibility determinations, and draw reasonable inferences from the evidence presented. *Id.*

13. The certified mail notice requirement of Section 602 provides that:

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

was sufficient. Additionally, the Bureau argues that review of the local printed telephone directories would have been fruitless because none of these directories contained a listing for Charles Fernandez, but only had one for Chuck Fernandez. The Purchasers raise arguments similar to those of the Bureau.

In addressing these arguments we note that, under Section 607.1(a) of the Law, the focus of our analysis is on the reasonableness of the Bureau's efforts: "the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him." 72 P.S. § 5860.607a(a). This section, while listing efforts that must be taken, does not provide an exhaustive list of efforts that could be taken.[14] Reasonable efforts are thus determined, in part, by the facts of the particular case. The Bureau has the burden of establishing that it has complied with the reasonable efforts requirements of Section 607.1 and the notice requirements of Section 602. *Rice v. Compro Distributing, Inc.*, 901 A.2d 570, 575 (Pa. Cmwlth.2006). A reasonable investigation is one that "use[s] *ordinary common sense business practices to ascertain proper addresses* ...." *In re Tax Sale of Real Property Situated in Jefferson Township (Ruffner)*, 828 A.2d 475, 479 (Pa.Cmwlth.2003) (emphasis added). This ordinary common sense "must go beyond the mere ceremonial act of notice by certified mail," but does not require "the equivalent of a title search...." *Id.*[15] Additionally, the Bureau is required to strictly adhere to the notice provisions of the Law. *Rivera v. Carbon County Tax Claim Bureau*, 857 A.2d 208, 214 (Pa.Cmwlth.2004).

Applied to the present case, we find that the Bureau failed to strictly adhere to the statutory requirements, and that this failure, by itself, is sufficient to sustain Owner's Petition. Owner focuses on the Bureau's failure to consult with the various county tax assessment offices. Section 607.1 specifies, using the directive, "shall" language, that "the dockets and indices of the county tax assessment offices" be consulted. 72 P.S. § 5860.607a(a). As evidence was presented that the 2004 and 2005 tax bills from the City of Easton and the 2004/2005 school tax bills were sent to the 210 Property, it seems that such a consultation with the tax assessment offices would have been fruitful. Worth noting is that the sale

---

13. 72 P.S. § 5860.602(e)(1).

14. Section 607.1(a) provides that:

The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.

72 P.S. § 5860.607a(a).

15. *Jones* similarly holds that the mailing of notice by certified mail that is returned to the governmental body does not, by itself, satisfy due process requirements. In the two cases that this Court has issued since *Jones*, we

have placed their holdings squarely within *Ruffner*. *See Miller v. Clinton County Tax Claim Bureau*, 909 A.2d 461 (Pa.Cmwlth. 2006); *Rice*. The focus of the Supreme Court's analysis is that the governmental body must "provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones*, 126 S.Ct. at 1713–14 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)) (quotations omitted). The Court explained that "the State should have taken additional reasonable steps to notify [owner], if practicable to do so" and that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *Jones*, 126 S.Ct. at 1718.

itself arose from a failure to pay school real estate taxes in 2002—yet the District knew to send 2004/2005 tax bills—issued within the same time frame as the upset sale and judicial sale notices—to the 210 Property. The Bureau seems to focus on the reasonableness of its actions, but does not squarely address whether it was actually required to contact the tax assessment offices. When questioned as to why she did not contact the tax collector for the District to find out where the District sent the mail, the Tax Claim Supervisor testified that "I probably made an erroneous assumption because the taxes came from the school district for the following two years." (Trial Ct. Tr. at 49, May 17, 2006.) The Tax Claim Supervisor explained that the county maintains the addresses, which it provides to the various taxing authorities, so she assumed that the authorities would have the same addresses that she did. (Trial Ct. Tr. at 49–50, May 17, 2006.) [16] This failure to consult with these tax assessment offices provides sufficient basis on its own to require the judicial sale to be set aside. [17]

■ We have held that the primary purpose of the Law is not to strip away citizens' property rights but, rather, to insure the collection of taxes. *Rivera,* 857 A.2d at 214. [18] The United States Supreme

---

16. She testified that:

> the county is to be the main contact for all changes of mailing addresses. All things are suppose to be coming from our office. And the records that are present here with these addresses on were not provided by the county when they provided the tax downloads. And the county is the one that provides those—those disks. Those addresses were not on those disks that were presented to the school district nor the municipalities.
>
> (Trial Ct. Tr. at 48, May 17, 2006.)

17. It does not appear that Owner argues this point, but it does seem that the County failed to search the county-wide telephone book, which, by the Law, it was required to consult. The trial court made the following relevant finding: "[The Tax Claim Supervisor] personally did not search the telephone book for Fernandez and [it] is uncertain whether any staff members in her office did so. [The Tax Claim Supervisor] testified that it is standard practice to search the telephone book for information." (Trial Ct. Adj., Finding of Fact 25.) This finding is supported by the testimony and evidence. Among the specific actions required to be taken is that "current telephone directories for the county" be searched. 72 P.S. § 5860.607a(a). Section 607.1 does not contain the permissive, "may" be consulted, when referring to telephone-books, but rather, contains the directive, "shall ... search ... current telephone directories." As there was no evidence that this

was done, it appears the Bureau did not strictly adhere to the statutory terms.

Additionally, evidence presented before the trial court indicated that, had the telephone books been examined, it would have found a "Chuck Fernandez." The Bureau seeks to diminish this fact, by arguing that the listing contains a different first name, and by also noting that the address listed in the directory is different from the actual mailing address. This argument is undercut by the Tax Claim Supervisor's own testimony as to the computer search that she performed which specifically linked a "Chuck Fernandez" with the Hellertown Property to which the Bureau had sent the notices. Had the Bureau used the telephone number provided for "Chuck Fernandez" in the telephone book, it may have been able to reach him.

In addition, checking the telephone book seems to qualify as an ordinary common sense business practice when one is seeking to obtain an address. Nonetheless, it does not appear that this issue is directly argued before this Court.

18. In contrast we must call attention to a statement made by the Tax Claim Supervisor that the Bureau's *"goal is to sell the property."* (Trial Ct. Tr. at 40, May 17, 2006 (emphasis added).) Arguably, this statement can be characterized as a mere comment, or perhaps a misstatement. However, given what is at issue in this case, a deprivation of a person's property interest, and given that this deprivation occurred without following statutorily prescribed procedures, we use this statement to reemphasize the principle that the Law's

Court has noted that "[p]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking. U.S. Const., Amdt. 14." *Jones*, 126 S.Ct. at 1718. Consistent with these principles, we have explained that, in reviewing whether due process requirements have been met, "the focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the statute." *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa.Cmwlth.2003).

The Bureau's representative identified the error in this case—a failure to perform statutorily required searches because of an assumption as to what the results of the search would be. Additionally, the assumption does not comport with ordinary common sense business practices. The statutory requirements protect the property rights of citizens and provide a minimum as to what must be accomplished to protect those rights. As noted in *Ruffner* and *Jones*, that minimum may not be sufficient under the facts of a particular case.

That minimum was not accomplished here.[19] Accordingly, we conclude that the judicial sale must be set aside.[20]

For these reasons, the order of the trial court is reversed.

### ORDER

**NOW**, May 31, 2007, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is hereby **REVERSED**.

---

purpose, and with it, the Bureau's primary purpose, is not to strip away citizen's property, but to insure payment of taxes. Although selling of the property may end up being the ultimate means used toward achieving that end, it is not the end itself.

19. It does not appear that Owner makes this argument, but it seems that the trial court erred in finding that actual notice of *tax delinquency* would suffice as actual notice of the *tax sale*. In *Jones,* the United States Supreme Court reiterated its rejection that notice of tax delinquency satisfied the notice requirements for the *actual sale* of property:

> [T]he common knowledge that property may become subject to government taking when taxes are not paid does not excuse the

government from complying with its constitutional obligation of notice before taking private property. We have previously stated the opposite: **An interested party's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.**

126 S.Ct. at 1717 (quotations omitted) (emphasis added). Under this authority, to the extent the trial court found actual notice from the tax delinquency notice that Owner received, the trial court erred. However, as noted, Owner does not seem to squarely raise this argument.

20. Based on our resolution of this first issue, we do not reach the issue of actual and sufficient notice.