# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthony Famageltto and Linda Famageltto, | : | |
| | : | |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 1271 C.D. 2014 |
| | : | |
| County of Erie Tax Claim Bureau and Perry Properties, Inc. | : | Submitted: September 16, 2015 |
| | : | |

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
HONORABLE BERNARD L. McGINLEY, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE MARY HANNAH LEAVITT, Judge[2]
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ANNE E. COVEY, Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  January 21, 2016**

Anthony Famageltto and Linda Famageltto, husband and wife, (together, Appellants), appeal from a June 23, 2014 Order of the Court of Common Pleas of Erie County (trial court) denying Appellants' Petition to Set Aside Tax Sale (Petition to Set Aside) of their home at 12769 Route 89, Wattsburg Township, Erie

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

County (Property). On appeal, Appellants argue that the trial court erred when it denied their Petition to Set Aside because the County of Erie Tax Claim Bureau (Bureau) did not comply with multiple provisions of the Real Estate Tax Sale Law[3] (Law) or due process. Appellants also argue that the trial court abused its discretion when it granted the Bureau's September 10, 2013 Petition to Waive Personal Service (Waiver Petition). For the following reasons we affirm, in part, reverse, in part, and remand for further proceedings.

## I.   NOTICE PRIOR TO AN UPSET TAX SALE

We are once again called upon to address a property owner's right to notice prior to a sale of property due to unpaid property taxes. "[T]he forfeiture of a person's property rights for failure to pay taxes is a momentous event under the Pennsylvania and United States Constitutions." Stanford-Gale v. Tax Claim Bureau of Susquehanna County, 816 A.2d 1214, 1216 (Pa. Cmwlth. 2003). Accordingly, the General Assembly established detailed notice provisions within the Law in order to guard against the deprivation of property without due process. Donofrio v. Northampton County Tax Claim Bureau, 811 A.2d 1120, 1122 (Pa. Cmwlth. 2002). Because tax claim bureaus have a constitutional duty to provide notice prior to a tax sale, tax claim bureaus bear the burden of showing strict compliance with the notice provisions of the Law and our inquiry focuses "not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the [Law]." Smith v. Tax Claim Bureau of Pike County, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003).

---

[3] Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101-5860.803.

The notice requirements of the Law relevant to this case are as follows. Section 602 of the Law, 72 P.S. § 5860.602, requires three different forms of notice to property owners prior to an upset tax sale: publication, posting, and mail.[4] Appellants here challenge the Bureau's compliance with the mailing requirements of Section 602(e) of the Law, which provides, in relevant part:

> (e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:
>
> > (1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.
> >
> > (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. § 5860.602(e)(1), (2).

---

[4] Section 602(a) requires that notice be published in two newspapers of general circulation in the county and one "legal journal, if any, designated by the court for publication of legal notices" at least thirty days prior to the scheduled sale. 72 P.S. § 5860.602(a). Section 602(e)(3) of the Law, 72 P.S. § 5860.602(e)(3), requires that the property "be posted at least ten (10) days prior to the sale." The posting of the property must be done in a manner that is "reasonable and likely to inform the taxpayer, as well as the public at large, of an intended real property sale." In Re: Upset Sale Tax Claim Bureau McKean County on September 10, 2007, 965 A.2d 1244, 1247 (Pa. Cmwlth. 2009) (internal quotations omitted).

When doubt is raised concerning the receipt of a mailed notice, Section 607.1 of the Law[5] requires taxing claim bureaus to conduct reasonable efforts to discover the whereabouts of, and provide notice to, the record owners of property scheduled to be exposed to an upset tax sale. We have summarized the efforts required as "determining the owners of record and then to use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given." In re Tax Sale of Real Property Situated in Jefferson Township, 828 A.2d 475, 479 (Pa. Cmwlth. 2003).

In addition to the notice requirements of Section 602 and 607.1, if the property is occupied by the owner, Section 601(a)(3) of the Law requires tax claim bureaus to personally serve property owners with written notice of a tax sale. Section 601(a)(3) of the Law provides:

> No owner-occupied property may be sold unless the bureau has given the owner occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. The sheriff or his deputy shall make a return of service to the bureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the bureau written proof of service, setting forth the name of the person served, the date and time and place of service, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.

---

[5] Added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a(a).

4

72 P.S. § 5860.601(a)(3). As such, because the Property at issue here was owner-occupied by Appellants, the Bureau was required to comply with Section 601(a)(3) of the Law.

With the foregoing principles in mind, we turn to the facts in the instant matter.

## II. BACKGROUND

The trial court held hearings on the matter on April 29, 2014 and June 18, 2014, which adduced the following facts. Appellants received the ten acre Property as a wedding gift from Mrs. Famageltto's father more than thirty years ago. From time to time, Appellants encountered difficulties staying current on their property tax bills and entered into two stay agreements with the Bureau as authorized by Section 603 of the Law.[6] Appellants defaulted on the agreement,

---

[6] 72 P.S. § 5860.603. Section 603 states, in relevant part:

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale . . . enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment. So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed . . . If a party to an instalment agreement defaults on the agreement, the bureau shall not enter into a new instalment agreement with that person within three (3) years of the default.

Id.

and, pursuant to Section 603 of the Law, were prohibited from entering into any new payment agreements for three years. Appellants entered into a second stay of sale agreement in 2011 covering tax years 2009 and 2010. The 2011 Stay Agreement required Appellants to pay installment payments in years 2011 and 2012 to satisfy delinquent taxes for 2009 and 2010. Appellants satisfied the 2011 Stay Agreement, though remained delinquent on their property taxes for tax year 2011. Since the tax year 2011 property taxes remained unpaid, the Bureau initiated the upset tax sale process in July 2013. On July 10, 2013, the Bureau sent two separate notices to Appellants at the address of the Property via certified mail, both of which were returned unclaimed.[7]

On July 17, 2013 the Bureau assigned Crystal Ellsworth (Server) to personally serve Appellants with notice of the upset tax sale and to physically post the Property. Server testified that, on August 22, 2013, she physically posted notice on the Property next to Appellants' mailbox, which was approximately three feet from Route 89.[8] Server then attempted to personally serve Appellants by driving to the front of the house and knocking on the door underneath the front porch. Server stated that she waited for approximately one minute, took pictures of the Property, and then left.

---

[7] Appellants do not argue that notice was not properly published prior to the upset tax sale. Evidence was submitted that showed that the Bureau published notice of the September 30, 2013 upset tax sale of the Property, along with hundreds of other properties, in *The Erie County Legal Journal* and *The Erie Times-News*.

[8] Server's testimony at the April 29, 2014 hearing is found at pages 321a-37a of the reproduced record.

Steven Letzelter, Director of the Bureau (Director), testified that because the notice of the upset tax sale through certified mail was returned unclaimed, the Bureau searched for alternative addresses for Appellants in, *inter alia*, its internal records, the telephone directory, the Tax Assessment Office records, the Office of the Prothonotary, and the local tax collector records.[9] The Bureau discovered an additional address for Appellants in the telephone directory, 12801 Rt. 89, Wattsburg, Pa., which Appellants testified was the address for Mrs. Famageltto's brother's home. Then, on September 16, 2013, the Bureau sent three notices of the September 30, 2013 upset tax sale by first class mail: one to Appellants at the Property, and separate letters to each Appellant at the alternative address identified in the telephone directory.

On September 10, 2013, the Bureau filed its Waiver Petition with the trial court seeking to have the personal service of notice requirement of Section 601(a)(3) of the Law waived for Appellants and the owners of 1,700 other owner-occupied properties scheduled to be exposed to the September 30, 2013 upset tax sale. The Waiver Petition states:

> The Server designee of Erie County has attempted to make personal service on the owner-occupiers of property listed. . . . For various reasons, including that the owner-occupiers have moved to parts unknown, the house being vacant, the owner-occupants refusing to answer the door, etc., personal service was not able to be made. . . . [T]he [S]erver designee made a good faith attempt to make personal service on the owner-occupiers. []All other requirements of notice,

_____

[9] Director's testimony at the April 29, 2014 hearing is found at pages 277a-318a of the reproduced record.

7

including publication in the newspaper and posting a sign on the properties have been accomplished.

(Waiver Petition ¶¶ 4-6, R.R. at 221a.)  The exhibit attached to the Waiver Petition lists the index number and the record owner(s)' name for each of the 1,700 properties for which the Bureau sought waiver, with a notation indicating there was "No Response," and a signed Verification by the Supervisor of the Bureau of Revenue and Tax Claim.  (Waiver Petition, R.R. at 224a-59a.)  The Waiver Petition was granted by Judge Cunningham of the trial court on the same day it was filed, September 10, 2013.  The Bureau sold the Property on September 30, 2013.  The successful bidder was Perry Properties, Inc. (Purchaser).

Appellants testified at the June 18, 2014 hearing.  Mrs. Famageltto testified as follows.[10]  She is the person in the household that normally pays property taxes, which she pays periodically when they are due.  Mrs. Famageltto was aware that she and her husband were behind on their taxes and that failure to pay the taxes could result in a tax sale.  However, Mrs. Famageltto did not know until the date of the tax sale that the Property was to be sold.  Appellants do occasionally receive certified mail at the Property, but Mrs. Famageltto did not recall for sure whether she received such a mailing in July 2013.  With regard to the posting on the Property, Mrs. Famageltto testified that she did not see a posting near their mailbox in August 2013, but acknowledged spotting a stake lying on the ground near their mailbox.  At some point *after* the September 30, 2013 upset tax sale, she found part of the posted notice in some high grass about twenty feet from their driveway

---

[10] Mrs. Famageltto's testimony at the June 18, 2014 hearing is found at 351a-94a of the reproduced record.

8

along Route 89. Mrs. Famageltto surmised that a truck may have knocked down the stake and the notice blew down the road before getting caught in the tall grass.[11]

Mr. Famageltto testified at the June 18, 2014 hearing that he did not recall receiving anything in the mail in August 2013 regarding unpaid property taxes.[12] Mr. Famageltto stated that he knew there was something at the post office waiting for the couple regarding taxes at some point earlier in the summer of 2013 and asked Mrs. Famageltto to take care of it. He testified that his wife told him that the notice had something to do with taxes on their home. Mr. Famageltto also testified, after reviewing his previous deposition testimony, that the post office once notified him that he had too much mail in the mailbox and that notice of the tax sale could have been sitting in his mailbox for some time prior to it being discovered.

---

[11] On cross-examination, Mrs. Famageltto was confronted with testimony she gave at an earlier deposition. Mrs. Famageltto was asked by counsel for Purchaser whether she testified during that deposition that the posted notice was found in her gardening beds next to her mailbox, and not in the tall grass down the road as she testified to at the June 18, 2014 hearing. Mrs. Famageltto testified that she discovered the notice *while* working in the flower beds, but did not actually find the notice *in* the flowerbeds. (Hr'g Tr. at 41, June 18, 2014, R.R. at 389a.) On redirect, counsel for Appellants asked Mrs. Famageltto to read the deposition verbatim. Mrs. Famageltto read the question as "when did you discover [the posted notice]." (Hr'g Tr. at 42, June 18, 2014, R.R. at 390a.) Mrs. Famageltto's deposition testimony focused on *when* the notice was discovered and the hearing testimony focused on *where* the notice was discovered.

[12] Mr. Famageltto's testimony at the June 18, 2014 hearing is found at 394a-415a of the reproduced record.

9

There is some discrepancy in the testimonies of Appellants with regard to when they actually learned of the sale. Mr. Famageltto testified that he received the notice dated September 11, 2013 on September 30, 2013, the morning of the tax sale, when he retrieved some mail from his mailbox. Mr. Famageltto stated that he immediately called Mrs. Famageltto to ask her to discover what was happening. According to Mr. Famageltto, Mrs. Famageltto called him back within an hour and a half of his call to inform him that the Bureau told her that the Property was already sold at a tax sale. (Hr'g Tr. at 56-58, June 18, 2014, R.R. at 404a-06a.) However, Mrs. Famageltto testified that Mr. Famageltto called her in the *afternoon* of September 30, 2013 to inquire about the notice he picked up in the mail earlier that morning and that she did not go to the courthouse until October 1, 2013 where she learned that the Property was sold. (Hr'g Tr. at 35, R.R. at 383a.) Mrs. Famageltto testified that because Mr. Famageltto did not call her until late in the day on September 30, 2013, she did not have time to go to the courthouse to inquire about the notice on that day. (Hr'g Tr. at 36, R.R. at 384a.) Both Appellants testified that, if they knew of the tax sale earlier, they would have either entered into a new payment agreement or borrowed money from their children to pay the tax delinquency.

Upon review of the facts, the trial court concluded:

the agency strictly complied with the tax sale law. They crossed every "t" and dotted every "i" with respect to the service requirements of the statute. The [Appellants'] testimony does not credibly refute this conclusion. As to [Appellants'] claim that the petition presented to Judge Cunningham requesting a waiver of personal service was deficient, this Court disagrees. It is not this Court's role to second guess or overrule Judge Cunningham's ruling as it is binding on this

10

Court under the coordinate jurisdiction doctrine Commonwealth v. Starr, 664 A[.]2d 1326, 1331-1333 (Pa[.] 1995)[.]

Sadly, the [Appellants] have lost their family home. However, any fault lies not with the tax claim bureau, but with their failure to do what was necessary to avoid these unfortunate circumstances. The direct and circumstantial evidence established that they either knew of the pending sale or intentionally avoided notice of it[.] Therefore, the [Appellants] are not entitled to relief[.]

(Trial Ct. Op. at 5.) This appeal followed.[13]

## III.  APPELLANTS' APPEAL

On appeal, Appellants argue that the trial court erred in denying their Petition to Set Aside because the Bureau did not comply with various notice requirements of the Law and due process. Specifically, Appellants contend that the trial court erred when it denied Appellants' Petition to Set Aside because the Bureau did not show that it strictly complied with the requirement of Section 607.1 of the Law to conduct reasonable efforts to discover the whereabouts of Appellants. Appellants also argue that the trial court erred by denying their Petition to Set Aside because the Bureau did not show that it satisfied the demands of due process by providing Appellants with actual notice of the impending tax sale of the Property. Finally, Appellants argue the trial court erred in granting the Bureau's Waiver Petition on September 10, 2013 because the Bureau did not satisfy the good cause requirement of Section 601(a)(3) of the Law and the Waiver Petition was defective on its face because it did not aver that the Bureau waited the

---

[13] Our review in tax sale cases "is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision with a lack of supporting evidence." Rice v. Compro Distributing, Inc., 901 A.2d 570, 574 (Pa. Cmwlth. 2006).

11

requisite twenty-five days prior to seeking a waiver of the personal service of notice requirement. We shall address each issue seriatim.

### A. Compliance with Section 607.1 of the Law

Appellants first argue that the trial court erred and that the tax sale should be set aside because the Bureau failed to conduct reasonable efforts to discover Appellants' whereabouts as required by Section 607.1 of the Law. Appellants contend that the Bureau should have searched for Appellants' telephone number and called Appellants to notify them of the tax sale. Relatedly, Appellants contend that while the Bureau sent notice to an alternative address, it sent the notice by first class mail too late to effectuate actual notice and never attempted to personally serve notice upon them at the alternative address.

We have said that "[w]here notice is obviously not effectively reaching the owners of record, the taxing bureau must go beyond the mere ceremonial act of notice by certified mail." Jefferson Township, 828 A.2d at 479. If the certified mailed is either returned unsigned, not returned, or returned under circumstances raising significant doubt as to the actual receipt of the notice, Section 607.1(a) of the Law requires taxing bureaus to conduct reasonable efforts to notify record owners, including,

> but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file

12

describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. § 5860.607a(a).

Contrary to Appellants' assertions, we conclude that the Bureau undertook reasonable notification efforts to discover Appellants' whereabouts as required by Section 607.1 of the Law. After attempts to deliver the notice by certified mail were returned to the post office unclaimed, the Bureau searched its internal records as well as the records of the assessment office, office of deeds and wills, the prothonotary's office, and the local tax collector. (Notes of Additional Notification Efforts, R.R. at 215a-16a.) The Bureau also searched the telephone directory and the "Polk Directory" for an alternate address. (Notes of Additional Notification Efforts, R.R. at 215a-16a.) The Bureau discovered an alternate address for Appellants in the telephone directory. The alternate address, 12801 Route 89, Wattsburg, Pa., is located adjacent to the Property and is owned by Mrs. Famageltto's brother. On September 11, 2013, the Bureau mailed one notice of the tax sale to Appellants at the Property, and two separate letters to each Appellant at 12801 Route 89, Wattsburg, Pa. (Ten Day Notices, R.R. 217a-19a; Proof of Mailing, R.R. at 220a.) These efforts were reasonable and satisfy the requirements of Section 607.1 of the Law. The Law does not require tax claim bureaus to place a phone call to a property owner prior to a tax sale or to personally serve notice upon any other address other than the address of the Property.[14] We note that the address of the Property was the correct address for Appellants.

---

[14] Appellants cite to a footnote in our decision in Fernandez v. Tax Claim Bureau of Northampton County, 925 A.2d 207, 214 n.17 (Pa. Cmwlth. 2007), as support for their argument that Section 607.1 of the Law requires tax claim bureaus to call a number listed for a property

*(Continued…)*

13

Insofar as Appellants argue the timeliness of the first class mailing did not afford them sufficient time to pay their delinquent property taxes, the Bureau mailed the notice on September 11, 2013, more than 10 days before the date of the sale in accordance with Section 602(e)(2) of the Law. Mr. Famageltto conceded during his June 18, 2014 testimony that it was possible that the notice was in the mailbox for some time and that he received a notice from the post office that his mailbox was too full. (Hr'g Tr. at 64, June 18, 2014, R.R. at 412a.) Although Appellants testified that they did not receive the notice until the morning of the tax sale, the cause of the delay was not attributable to the date of mailing, but rather to Appellants' delay in retrieving mail from their mailbox.

### B. Compliance with Due Process

Appellants next contend that, in addition to satisfying the notice requirements of the Law, due process requires tax claim bureaus to provide property owners with actual notice of pending tax sales, if reasonably possible. Appellants argue that the trial court erred by blaming them for the lack of notice when due process could have been satisfied if the Bureau sent notice by mail earlier, called Appellants, or attempted to personally service notice upon them in the evening.

---

owner in the telephone book. Appellants misconstrue our holding in that case. The tax sale in Fernandez was set aside because the tax claim bureau failed to search the records of the tax assessment office. Id. at 214. Nowhere in Fernandez, or anywhere else in our case law, do we hold that Section 607.1 of the Law requires tax claim bureaus to call a property owner to confirm the whereabouts of a property owner or to provide notice of a tax sale.

14

A fundamental requirement of due process is that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Our Supreme Court has applied this principle to the tax sale context as requiring tax claim bureaus to undertake "*reasonable effort[s]*" "to provide *actual* notice" of the tax sale. Tracy v. County of Chester, Tax Claim Bureau, 489 A.2d 1334, 1338 (Pa. 1985) (emphasis in original). Appellants are correct that "a taxing authority's strict compliance with the [notice requirements of the Law] does not necessarily satisfy the demands of due process." Geier v. Tax Claim Bureau of Schuylkill County, 588 A.2d 480, 483 (Pa. 1991). Due process requires that the "practicalities and peculiarities of the case" are considered and given their "due regard." Mullane, 339 U.S. at 314.

The cases cited by Appellants where courts of this Commonwealth have held that strict compliance with the notice requirements of the Law is insufficient to satisfy the demands of due process involve circumstances where the tax claim bureau failed to send notice to all of the property owners. See, e.g. Geier, 588 A.2d at 482 (holding that notwithstanding technical compliance with the notice requirements of the Law, an individual who had an interest in the property via a partnership agreement was entitled to mailed notice of the tax sale). We have said that the "essence" of these cases is that "due process requires [tax claim] bureaus . . . to conduct reasonable investigations to ascertain the identity and whereabouts of the latest owners of record of property subject to an upset sale for purposes of

15

providing notice to that party." <u>Farro v. Tax Claim Bureau of Monroe County</u>, 704 A.2d 1137, 1142 (Pa. Cmwlth. 1997).

Appellants neither argue that the notices were sent to the incorrect owners of the Property, nor do they argue that the notices were sent to an incorrect address. It is undisputed that notice was sent to Appellants at their correct address and that Appellants are the record owners of the Property. The only justification for Appellants not receiving notice on time to prevent the tax sale is that Appellants failed to retrieve their mail or see the notice posted next to their mail box. Due process does not require tax claim bureaus to conduct extraordinary efforts to provide notice when a property owner's failure to retrieve his or her mail caused the lack of actual notice. By strictly complying with the notice requirements of the Law and satisfying its obligations under Section 607.1 of the Law to discover the whereabouts of, and provide notice to, the record owners of the Property, the Bureau provided notice to Appellants in a manner reasonably calculated to provide Appellants notice of the September 30, 2013 upset tax sale and, therefore, satisfied the demands of due process.

### C. Waiver of Personal Service of Notice

Finally, Appellants argue that the Waiver Petition did not satisfy the "good cause" requirement of Section 601(a)(3) of the Law. According to Appellants, the Waiver Petition was not supported by facts showing when service was attempted, on how many occasions, or who attempted service, and the only justification listed for the waiver was that there was no response. Appellants also argue that the Waiver Petition is defective on its face insofar as it fails to show that the Bureau

waited the required twenty-five days after personal service of notice was requested prior to seeking a waiver from the trial court.

The Bureau and Purchaser respond by arguing that the trial court correctly waived the personal service of notice requirement of Section 601(a)(3) of the Law because the Bureau complied with the requirements to obtain such a waiver and Appellants were not home when Server attempted to effectuate personal service. Purchaser also argues that the trial court was correct to not second guess Judge Cunningham's decision to grant the Bureau's Waiver Petition under the coordinate jurisdiction doctrine.

Section 601(a)(3) of the Law requires tax claim bureaus to provide owner-occupants with personal service of written notice of a pending tax sale at least ten days prior to the tax sale. Section 601(a)(3) demonstrates the General Assembly's "heightened concern for owner occupants being divested of the very property in which they are residing." Matter of Tax Sales by Tax Claim Bureau of Dauphin County, 651 A.2d 1157, 1159 (Pa. Cmwlth. 1994). We have said that, "[b]y enacting [S]ection 601[(a)(3)], the [General Assembly] expressed a desire to provide a qualitatively different type of notice to an owner occupant and afford such owner with increased protection by way of additional notice." McKelvey v. Westmoreland County Tax Claim Bureau, 983 A.2d 1271, 1274 (Pa. Cmwlth. 2009). Yet, the General Assembly understood that, in certain circumstances, tax claim bureaus should not be required to incur the high costs associated with ensuring that notice was received by each owner-occupant personally and included a provision within Section 601(a)(3) of the Law allowing the personal service of

17

notice requirement to be waived for "good cause shown." The General Assembly decided to place a burden on the taxing bureaus to provide justification for a waiver and to give trial courts the task of balancing the goal of providing heightened notice to owner-occupants against the taxing bureaus' obligations to collect property taxes. See In Re: Consolidated Reports et al (Neff), ___ A.3d ___, ___ (Pa. Cmwlth., No. 752 C.D. 2014, filed January 21, 2016) (*en banc*), slip op. at 20 (reasoning that whether good cause under Section 601(a)(3) of the Law exists is a matter left to the trial court's sound discretion and requires trial courts to "consider[] the facts of this case in light of the fundamental purposes of the Law").

The trial court here did not independently examine whether the Bureau showed good cause to waive the personal service of notice requirement under Section 601(a)(3) of the Law. Instead, the trial court found that it was not its "role to second guess or overrule Judge Cunningham's ruling as it [was] binding on [the] Court under the coordinate jurisdiction doctrine." (Trial Ct. Op. at 5.) Whether a trial court is obligated to uphold, on the basis of the coordinate jurisdiction doctrine, an earlier order waiving personal service of notice pursuant to Section 601(a)(3) of the Law is a matter of first impression for this Court.

The coordinate jurisdiction doctrine states that "judges of [equal] jurisdiction sitting in the same case should not overrule each others' decisions." Commonwealth v. Starr, 664 A.2d 1326, 1331 (Pa. 1995). In Starr, our Supreme Court reasoned that the coordinate jurisdiction rule fits squarely under the larger, "law of the case" doctrine and merged the two doctrines "in an effort to standardize and streamline the law to which [Pennsylvania] courts must refer when

considering prior rulings of courts of coordinate jurisdiction . . . ." Id. at 1333. The law of the case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." Id. at 1331. The goal of the doctrine is: "(1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." Id. Departure from the law of the case doctrine

> is allowed only in exceptional circumstances[,] such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed.

Id. at 1332.

Under these circumstances, we do not believe the coordinate jurisdiction rule precluded the trial court from examining whether there was good cause to waive the personal service of notice requirement. Judge Cunningham was presented with the Waiver Petition on September 10, 2013, requesting a waiver of personal service of notice for 1,700 property owners. The Bureau provided its justification for waiver of personal service for 1,700 properties it considered owner-occupied,[15] which includes an averment that "server designee made a good faith attempt to

---

[15] We recognize that tax records will often not indicate whether the properties are owner-occupied, have been rented, or used as a second home.

make personal service on the owner-occupiers" and that "[a]ll other requirements of notice . . . have been accomplished." (Waiver Petition ¶¶ 5-6, R.R. at 221a.) Upon receiving the Waiver Petition, Judge Cunningham made an initial determination of good cause to waive personal service of notice based on the averments in the Waiver Petition and the attachments thereto, which are clothed in a presumption of regularity that attaches to all official acts. See Hughes v. Chaplin, 132 A.2d 200, 202 (Pa. 1957) (stating that "a *prima facie* presumption of the regularity of the acts of public officers exists until the contrary appears . . . . In tax sales it is particularly suitable") (internal quotations omitted). Based on the evidence presented to Judge Cunningham, and given the presumption of regularity that attaches to the Bureau's activities, we cannot say that the Waiver Petition was facially defective or that Judge Cunningham abused his discretion in finding that the Bureau showed good cause for receiving the waiver of personal service of notice at that time. However, this proceeding was necessarily one-sided because the property owners had not been found or become part of the process.

It was only later in the statutory tax sale process that Appellants could become involved. Pursuant to Section 607(b) of the Law,[16] within thirty days of

---

[16] 72 P.S. § 5860.607(b). Section 607(b) provides:

The bureau shall, at the expense of the county, within ten (10) days after confirmation nisi of the consolidated return, publish a general notice once in a newspaper of general circulation published in the county, and in the legal journal, if any, designated by rules of court for the publication of legal notices, stating (1) that the consolidated return of the bureau with respect to any such sale for taxes has been presented to the court, (2) giving the date of confirmation nisi and (3) that objections or exceptions thereto may be filed by any owner or lien creditor within thirty (30) days after the court has made a confirmation nisi of the consolidated return or that the return will be confirmed absolutely.

*(Continued…)*

20

the trial court confirming the tax sale nisi, a property owner may challenge the regularity of the sale through filing exceptions. Appellants filed exceptions, and their challenge rebuts the presumption of regularity of the Bureau's activities. Appellants' exceptions are resolved through a confrontational process where the burden is initially on the Bureau to show that it strictly complied with the notice requirements of the Law. Jefferson Township, 828 A.2d at 478-79. It is not until this point, in the context of the adversarial proceeding, that evidence can be presented and tested, that a determination as to whether there was in fact good cause to waive the personal service of notice requirement for that property should be made, at the same time all the other notice requirements are tested.

Allowing review at this hearing effectuates the legislative intent of the personal service of notice requirement for owner-occupied properties and is consistent with the purpose of the coordinate jurisdiction rule. Upon receipt of a petition to waive the personal service of notice requirement of Section 601(a)(3), the trial judge may exercise discretion and find that good cause was shown sufficient to permit the waiver of personal service of notice without further, and often unnecessary, costs to tax claim bureaus and the courts. For example, in this case, the petition included 1,700 properties. However, once a property owner challenges the tax sale, and tax claim bureaus are required to meet the burden of proving that compliance with the notice requirements of the Law in an adversarial

---

Id. The statutory appeal process of Section 607(b) of the Law "is not the *exclusive* method to challenge the notice. Courts of equity continue to have the power to inquire into the issue even after the judicial confirmation of a tax sale." M.C. and E.K. Lees, Inc. v. Capenos, 119 A.3d 1092, 1099 (Pa. Cmwlth. 2015) (emphasis in original).

21

proceeding, there is opportunity to test whether the heightened requirements for notice to owner-occupants were in fact met. Thus, the legislative intent to provide additional protections for owner-occupants is fulfilled in a cost-effective manner, which enables a full hearing and determination on the evidence at the time when a judge can be presented with all of the evidence. Because this second judge can be presented with additional and different evidence from both parties regarding the tax claim bureau's efforts to comply with the Law's personal service of notice requirement, the second judge is not deciding the same questions as the first judge and the coordinate jurisdiction doctrine should not apply. Therefore, because the coordinate jurisdiction rule did not preclude the trial court from considering whether the Bureau satisfied the good cause shown requirement of Section 601(a)(3) of the Law based on the evidence, testimony, and arguments made by the parties in this matter,[17] we reverse the trial court's Order and remand for the trial court to make this determination based on the record evidence.

## IV. CONCLUSION

For the foregoing reasons, we reverse the trial court's Order only insofar as it upholds the September 10, 2013 order of Judge Cunningham granting the Bureau's Waiver Petition and remand for a determination on whether the Bureau

---

[17] Appellants do not argue that the Bureau failed to wait the requisite twenty-five days before seeking a waiver of the personal service of notice requirement of Section 601(a)(3) of the Law. Appellants' argument in this regard is simply that the Waiver Petition is facially defective because it does not show that the Bureau waited the required time period. As stated above, we conclude that the Bureau's Waiver Petition was sufficient under the circumstances to warrant Judge Cunningham's Order. We note that challenges alleging that a tax claim bureau did not comply with the twenty-five day waiting period, like challenges to the "good cause" requirement, may be addressed in conjunction with a property owner's other challenges to a tax claim bureau's notice efforts.

22

satisfied the requirements of Section 601(a)(3) of the Law.  We discern no error in the remaining portions of the trial court's Order.

_____
**RENÉE COHN JUBELIRER, Judge**


Judge Leavitt concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Famageltto and Linda Famageltto,

     Appellants

     v.

County of Erie Tax Claim Bureau and Perry Properties, Inc.

:
:
:
:
:
:
:
:
:
:
:
:

No. 1271 C.D. 2014

# **O R D E R**

 **NOW**, January 21, 2016, the June 23, 2014 Order of the Court of Common Pleas of Erie County (trial court), entered in the above-captioned matter, is **REVERSED** to the extent that it upholds the September 10, 2013 order granting the County of Erie Tax Claim Bureau's (Bureau) Petition to Waive Personal Service, and this matter is **REMANDED** for a determination as to whether the Bureau satisfied the requirements of Section 601(a)(3) of the Real Estate Tax Sale Law, 72 P.S. § 5860.601(a)(3).  The trial court's June 23, 2014 Order is affirmed in all other respects.


 Jurisdiction relinquished.


          _____
          **RENÉE COHN JUBELIRER, Judge**